KING v. CHAPMAN et al.

Civ. A. No. 143.

District Court, M. D. Georgia,
Columbus Division.

Oct. 12, 1945.

Oscar D. Smith, of Columbus, Ga., and Harry S. Strozier, of Macon, Ga., for plaintiff.

A. Edward Smith, of Columbus, Ga. and Hall & Bloch, of Macon, Ga. (Chas. J. Bloch and Ellsworth Hall, Jr., both of Macon, Ga., of counsel), for defendants.

DAVIS, District Judge.

This case arises under Sections 31 and 43 of Title 8 U.S.C.A.[1] and plaintiff seeks damages of the defendants for the alleged deprivation of his civil rights guaranteed to him by the Constitution and laws of the United States; viz., the right to vote in Muscogee County in the Democratic Primary held on July 4, 1944, for the nomination of United States Senator and a member of the House of Representatives, as well as state officers.

Inasmuch as candidates for the offices of United States Senator and members of the National House of Representatives were nominated at this primary, it is unnecessary to pass on the question of whether or not this action would lie had the primary been one merely for the nomination of state or local officers.

The facts are stipulated by the parties.

[1] "8 U.S.C.A. § 31. Race, color, or previous condition not to affect right to vote.

"All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law, custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding. R.S. § 2004.

"8 U.S.C.A. § 43. Civil action for deprivation of rights.

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an ac-

Such as are material to a consideration and determination of this case are, as follows:

Plaintiff is a member of the negro race, and at the time of the primary election held on July 4, 1944 was a duly qualified and registered voter of Muscogee County, Georgia, and of the State of Georgia, and a resident and citizen of said state and county.

The defendant, J. E. Chapman, Jr., was at the time of said primary election the duly elected Chairman of the Democratic Executive Committee of Muscogee County, Georgia. The other defendants at said time were the remaining members of said committee and were selected thereto by appointment. The defendants at the time of the filing of this suit were residents and citizens of Muscogee County, Georgia.

The Democratic Party in Muscogee County polled more than ten per cent of the entire vote cast in the county in the preceding primary for the candidate receiving the greatest number of votes.

On July 4, 1944, there was held throughout the State of Georgia and in Muscogee County, Georgia, a primary election for the nomination of Democratic candidates for United States Senator, Representatives in the House of Representatives of the United States, and various state officers. Said primary election was held in conformity with the rules and regulations of the State Democratic Executive Committee, adopted January 27, 1944, and under the immediate supervision of the defendants and under the laws of Georgia relating to primary elections.

Defendants, as members of said Democratic Executive Committee of Muscogee County, Georgia, held the election of July 4, 1944, in Muscogee County, Georgia, and in such capacity they appointed the clerks, tabulators and managers therefor and publicized the rules and regulations which governed said election.

On said date of July 4, 1944, during the regular hours of voting, plaintiff presented himself at the Muscogee County courthouse in the City of Columbus, in the precinct in which he was registered, and expressed a desire to vote. Defendant advised plaintiff that, solely on account of his race, he was not qualified to be a member of the Democratic Party of the State of Georgia and was, therefore, not qualified to vote in said primary, by reason of Rule Two of the rules governing said primary as adopted by the State Democratic Executive Committee, and for that reason alone defendants refused to permit plaintiff to vote. Plaintiff was a believer in the tenets of the Democratic Party and was willing to support the Democratic nominees in the ensuing general election.

Since 1900, the Democratic nominees for United States Senator, Representatives in Congress, Governor and other State-House offices nominated at primaries have been elected in the ensuing general election.

All State and County officers upon whom the law devolves any duty or duties in connection with primary elections perform such duties without expense to the Democratic Party or its candidates or nominees.

All of the Democratic candidates nominated in the primary of July 4, 1944 were elected to office in the General Election in November, 1944.

No other party than the Democratic Party has held a state-wide primary in Georgia during the past forty years, though there have been candidates in the general elections other than the Democratic nominees.

The State Democratic Executive Committee acting on July 4, 1944 was selected pursuant to a resolution adopted by the State Democratic Convention held on October 7, 1942.[2]

The delegates to this Convention were selected in accordance with a party custom, which permitted the candidate for Gov-

---

tion at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

2 "Convention Resolution No. 10:

"Be it resolved by the State Democratic Convention duly assembled in session in Macon, Georgia, on this October 7, 1942, as follows:

"1. That a State Democratic Executive Committee be selected to serve until the Regular State Democratic Convention in 1946; said Committee to be composed of the officers thereof as hereinafter provid-

ed and six members from each Congressional District of the State to be selected by this Convention; and sixty members from the State at large, to be appointed by the Chairman of said Committee.

"2. That the Permanent Chairman, the Executive Vice-Chairman, the second Vice-Chairman, the third Vice-Chairman, the Secretary, the assistant Secretary and the Treasurer of this Convention be and they are hereby named as the Chairman, the Executive Vice-Chairman, the second Vice-

ernor prevailing in a given county to name the delegates to the Convention, each county being permitted by this custom to two votes for each representative to which such county was entitled in the lower House of the General Assembly.

The expense of holding primaries is defrayed by assessment against candidates in such amounts as are determined by the Party authorities.

In all counties of the State, other than Muscogee, the selection of members of the Democratic Executive Committees of the respective counties is governed by the rules of the party.

The defendants, in refusing to permit plaintiff to vote as above stated, were acting in their capacity as members of the Democratic Executive Committee of Muscogee County, Georgia.

Since 1908 the Democratic Party in Georgia has always held a State-wide primary biennially in the years in which by law a general election is held in November.

The election law known as the Australian Ballot Law, which is codified in the Code of Georgia as Chapter 34-19, has been put into effect in a number of counties in the State and was in effect in Muscogee County on July 4, 1944.

Paragraph 1 of the resolution, adopted by the State Democratic Executive Committee on January 27, 1944, provides: "That a Democratic Primary Election be held on July 4, 1944, in each of the counties of this State for the nomination of candidates of the Democratic Party for the following offices, whether for full or unexpired terms, or both, to-wit: United States Senator, Justices of the Supreme Court, Judge of the Court of Appeals, Representatives in the Congress of the United States from the various' Congressional Districts of the State * * * (and other state offices). * * * The entries for said primary shall close April 1st, 1944 at 12:00 o'clock noon, Central War Time".

Paragraph 2 of said resolution provides:

"The Primary Election shall be conducted in accordance with the laws of this State and the customs of the party insofar as they do not conflict with existing laws and these rules. All white electors' who are Democrats and qualified to vote in the General Election and who in good faith will pledge themselves to support the Democratic candidates for all offices to be voted on this year, are hereby declared qualified to vote in said primary."

It was conceded in the arguments that the right of a qualified elector to vote in a Primary for the selection of candidates for United States Senator and members of the House of Representatives to be voted on in the General Election, when such primary is an integral part, by law or in fact of the electoral process of the state, is a right secured by the Constitution and laws of the United States.

It was also conceded that the deprivation of such right, to be the basis of a cause of action under Title 8 U.S.C.A. Section 43, must be by state action.

That brings us then to this question: When a political party in Georgia determines to hold and does hold a primary for the selection of candidates for United States Senator and members of the House of Representatives, is such primary an integral part of the election system of the state, by law or in fact; and, if so, is it action by the State? In order to determine these matters, it is necessary to look to the Constitution and statutes of the State of Georgia and to the stipulations of fact.

The Constitution of 1877, which was of force at the time this cause arose, recognizes primaries in section 2-608, Const. art. 2, § 1, par. 8, providing: "No person shall be allowed to participate in a primary of any political party or a convention of any political party in this State who is not a qualified voter."

It might be noted here that a new constitution was ratified on August 7, 1945, wherein no mention is made of primaries.

Chairman, the third Vice-Chairman, the Secretary, the assistant Secretary and the Treasurer of said Democratic Executive Committee. The temporary Chairman of this Convention is hereby elected and designated as the third Vice-Chairman,

"3. Any vacancy in any office or membership on the State Democratic Executive Committee shall be filled by appointment of the Chairman and in the event of a vacancy in the office of Chairman, the Executive Vice-Chairman shall become the Chairman of the Committee.

"4. The State Democratic Executive Committee is hereby clothed with complete authority and jurisdiction over all Democratic Party matters in as full and complete manner as the State Democratic Convention or Party."

Title 34 of the Georgia Code of 1933 embraces all of the statutes touching elections. Sections 34-101 through 34-115 provide for the registration of voters, the duties imposed upon the Tax Collectors with reference thereto, and the form of oath required to qualify an elector.

§ 34-111 requires that the race of the registrant be noted on the voters' book.

§ 34-201 requires the tax collectors of the several counties to make registration lists of qualified electors; and § 34-202 provides that such lists shall be filed with the county registrar. § 34-203 provides that the tax collector, the ordinary and the clerk of the superior court shall prepare a list of disqualified voters, and § 34-204 the method to be used. § 34-301 provides for the appointment of three registrars in each county by the judge of the superior court, and their appointment entered on the minutes of the court. § 34-303 prescribes the oath they shall take.

Sections 34-401 to 34-404, inclusive, prescribe their duties. § 34-405 provides: "Each person whose name is upon the registration list for the general election provided for in the foregoing section shall be entitled to vote at the general State election for said year and all primaries to nominate candidates for offices to be filled at said general State election and also at the Federal election in November of said year * * *."

§ 34-406 provides for supplemental list for persons whose names are not on the registration list, referred to in § 34-405, and who desire "to vote at any election or primary subsequent to the general State election, whether in the said year or the succeeding year * * *."

§ 34-701 requires the county registrars on the day of the election to furnish the managers of the election at each voting precinct in the county copy of the list of registered voters for such precinct.

§ 34-901 requires the managers of elections of the different precincts to return the lists of registered voters to the clerk of the superior court, that he shall keep the lists open for public inspection and present them to the foreman of the next grand jury for such action as may be deemed proper by it.

§ 34-1001 prescribes the compensation to be paid to the tax collector, ordinary and clerk of the superior court and the registrars for their services in preparation of registration lists, and provides for payment out of the county treasury.

§§ 34-1201 to 34-1203 provide for election managers, the form of oath to be taken by them, and the proper person to administer it. § 34-1302 fixes the general election date on Tuesday after the first Monday in November, in the even-numbered years.

Sections 34-1901 to 34-1913, both inclusive, provide for the Australian Ballot System (which was operative in Muscogee County on July 4, 1944). § 34-1903 requires that in all primary elections, it is the duty of the county executive committee, or other party authority of the political party holding the election, to provide official ballots, with the names of all candidates, who are properly qualified in accordance with the rules of the party, printed thereon, and prescribes other requirements as to the ballot. § 34-1911 prescribes a fee of $3 to the ordinary, to be paid out of the county treasury for making the arrangements and performing his duties required in the election under the Australian Ballot System.

§ 34-2001 requires candidates for United States Senator, Governor and other state officers, within 20 days from the date of holding the election or primary election at which they shall be candidates, to file with the Comptroller General an itemized statement, under oath, of all campaign expenses incurred by them, and likewise, candidates for Congress, within 20 days after the holding of the election or primary election at which they shall be candidates, to file with the clerk of the superior court of each of the several counties composing the congressional district, an itemized statement under oath of all campaign expenses incurred by them. § 34-2002 provides, "No person violating the provisions of the preceding section shall be declared the nominee of his party."

We come now to consider the Georgia statutes dealing directly with primary elections. They are embraced in sections 34-3201 to 34-3218, both inclusive. The first sentence in § 34-3201 provides: "Every political primary election held by any political party, organization, or association, for the purpose of choosing or selecting candidates for office, or the election of delegates to conventions in this State, shall be presided over and conducted in the manner and form prescribed by the rules of the political party, organization, or association holding such primary elections, by

managers selected in the manner prescribed by such rules."

The section then requires that the managers shall, before entering upon the discharge of their duties, each take and subscribe an oath and prescribes the form of oath and before whom it shall be taken; if the proper officer is not present, then the managers may administer the oath to each other. This required oath is then to be filed in the office of the clerk of the Superior Court of the county in which the primary election is held within five days after the election.

§ 34-3202 describes in detail the duties imposed upon the managers of such primary elections, as follows:

(1) "Before any ballots are received at such primary elections, and immediately before opening the polls, the managers shall open each ballot box to be used in the election, and shall exhibit the same publicly, to show that there are no ballots in the box.

(2) "They shall then close and lock or seal the box, except the opening to receive the ballots, and shall not again open the same until the close of the election.

(3) "They shall keep a list of voters voting at the election, and shall, before receiving any ballot, administer to the voter an oath, provided the voter's vote is challenged, that he is duly qualified to vote according to the rules of the party, and according to the election laws of this State, and that he has not voted before in such primary election then being held.

(4) "At the close of the election the managers shall proceed publicly to count the votes and declare the result.

(5) "They shall certify the result of the election, and transmit the certificate with the tally sheet or poll list, together with the ballots cast, and all other papers relating to such primary election, within the time and in the manner prescribed in this Chapter."

Section 34-3203 provides: "Whenever any political party shall hold primary elections for nomination of candidates for office, such party or its authorities shall cause all candidates for nominations for Governor, Statehouse Officers, members of Congress, United States Senators (and other state officers) to be voted for on one and the same day throughout the State at such date as may be fixed by the State executive committee of such party,

except where a second primary shall have been called by the authorities of said party for any particular office on some subsequent day, through failure to make, for any cause, a valid nomination at the first primary, or in consequence of a contest: Provided, that said executive committee shall not fix the date for the said general primary earlier than 60 days before the date of the general State election in November: Provided further, that this section shall not have the effect of requiring a primary for judges and solicitors except in their respective circuits, or for members of the General Assembly except in their respective counties, or for State senators except in their counties, as the authorities of said party may authorize or direct."

§ 34-3204 provides where the elector shall cast his ballot.

§ 34-3205 provides that "No person who has not first taken the oath prescribed by law for managers of primary elections shall act as manager, clerk, or assistant, or in any way take part in receiving, counting, or consolidating the votes or results in any such primary election, and no manager of any primary election shall permit any person who has not first taken the oath now prescribed by law for the managers of primary elections, to act as assistant or clerk or in any way take part in receiving, counting, or consolidating the votes or results in any such primary election."

§ 34-3206 prohibits any manager of a primary election from receiving the ballot of any elector until he has first ascertained that such elector is a duly qualified registered voter.

§ 34-3207 prescribes in detail how the returns shall be made:

(1) "The returns of the managers, with the tally sheets, lists of voters, and ballots, together with all papers connected with said election, shall be filed in the office of the clerk of the superior court of the county in which said election shall be held, within four days after the final declaration of the result thereof.

(2) "One of the lists of the voters and one of the registration lists with names of those checked or marked as voters shall be exhibited by said clerk to anyone desiring to inspect same, but the other documents deposited as aforesaid shall be kept unopened and under seal until the next meeting of the grand jury, to which grand

jury one registration list, one list of voters, and the checked registration list above mentioned shall be exhibited; and if no action shall be taken thereon by the grand jury and no contest shall have been filed within the time prescribed by the authorities of said party, all of said election papers shall be destroyed."

§ 34-3208 requires that "persons authorized by the rules of the party * * * to hold such primary election shall provide an official ballot whereon shall be printed all the names of the candidates for the various offices * * *."

§ 34-3209 is a delegation of power by the State to the party authorities, as follows: "The party authorities shall, in all matters not provided for in this Chapter, formulate rules and regulations for holding said primary election and for making returns thereof to the proper party authorities."

§ 34-3210 provides: "Every such primary election shall be held at the time and place, and under the regulations prescribed by the rules of the party, organization, or association holding the same, and the return shall be made and the result declared as prescribed in this Chapter."

§ 34-3211 provides for contests and makes it the duty of the clerk of the superior court to deliver any questioned ballots, together with all the papers connected with the primary election, to the person who shall preside at the taking of the testimony in such contest.

We come now to Section 34-3212, which is perhaps unique in the electoral systems of this country, and which establishes what is known as the county unit vote system for candidates for certain offices, and provides as follows:

"34-3212. County unit vote.—Whenever any political party shall hold primary elections for nomination of candidates for United States Senator, Governor, Statehouse officers, Justices of the Supreme Court, and Judges of the Court of Appeals, such party or its authorities shall cause all candidates for nominations for said offices to be voted for on one and the same day throughout the State, which is hereby fixed as the second Wednesday in September of each year in which there is a regular general election. Candidates for nominations to the above-named offices who receive, respectively, the highest number of popular votes in any given county shall be considered to have carried such county, and shall be entitled to the full vote of such county on the county unit basis, that is to say, two votes for each representative to which such county is entitled in the lower House of the General Assembly. If in any county any two or more candidates shall tie for the highest number of popular votes received, the county unit vote of such county shall be equally divided between the candidates so tying. All such county unit votes shall within 10 days after such primary be accurately consolidated by the chairman and secretary of the State committee of the political party holding such primary, and published in a newspaper published at the capital, within three days after the completion of the consolidation, certified under the hands and seals of said chairman and secretary; and the candidates for said offices, respectively, who shall receive a majority of all the county unit votes, throughout the entire state, upon the basis above set forth, shall be declared by the State convention of the party holding such primary, or the permanent chairman thereof, or other party authority, without the necessity of a formal ballot, to be the nominees of such party for the above-named offices, respectively, and it shall be the duty of the State executive committee elected or appointed at such convention, or by its authority, or the chairman or secretary thereof, or other authority of such party, to see to it that the names of all such successful candidates shall be placed upon the tickets or ballots of such party at the general election following such primary, and such successful candidates shall be considered, deemed and held as the duly nominated candidates of such party for the offices named: Provided, that in the event there are only two candidates for any particular office referred to in this section, and it shall appear, after the consolidation of all of the county unit votes throughout the State, that said candidates have received an equal number of county unit votes, the one who shall have received a majority of the popular votes shall be declared by the State convention of the party holding such primary, or the permanent chairman thereof, or other party authority, without the necessity of a formal ballot, to be the nominee of such party for such office; and it shall be the duty of the State executive committee elected or appointed at such convention, or by its authority, or the chairman or secretary thereof, or other authority of such party, to see to it that the name of such successful

candidate shall be placed upon the tickets or ballots of such party at the general election following such primary, and such successful candidate shall be considered, deemed and held as the duly nominated candidate of such party for the office named: Provided, further, that if no convention of such party shall be called or held, the declaration of the result shall be made in such manner as may be prescribed by the State committee or other authority of such party. (Acts 1917, pp. 183, 184.)"

Section 34-3213 makes provision for a second primary in the event no candidate for United States Senator or Governor receives a majority of the county unit votes throughout the state in the first primary, and the different steps are set forth in said section.

§ 34-3214 provides, "In each regular election year in which a second primary shall be necessary, by reason of a failure of a candidate or candidates to receive a majority of the county unit votes at the first primary election, such party or its authority shall not hold its convention until after the expiration of 15 days from the date of such second primary election."

§ 34-3215 provides for special primary elections to fill vacancies.

§ 34-3216 provides that the expense of holding primary elections shall be paid by the political party which causes the same to be held.

§ 34-3217 provides, "Nothing in this law shall be construed to provide or require any definite unit of election for candidates for nominations for members of Congress, judges of the superior courts, solicitors general, members of the General Assembly and county officers; and this law shall not be construed to require a primary for any of the last-named officials, except in their respective districts, circuits or counties, as provided by law."

The section further provides that "primaries for nomination of members of Congress, judges of the superior courts, solicitors general and members of the General Assembly shall be held on the" same date for primaries for United States Senator, Governor and other State-house officers.

§ 34-3218 is an over-all section and provides: "All the laws in reference to the qualification of voters and their registration shall apply to said elections, and no person who is not a duly qualified and reg- istered voter according to law and who is not also duly qualified in accordance with the rules and regulations of the party holding the same, shall be entitled to vote at any such primary election."

§ 34-3301 to § 34-3315, both inclusive, deal with absentee voting or voting by mail and all these provisions are applicable to primary elections.

§ 34-2003 (Acts 1943, p. 441) provides that, "No candidate for nomination to any office in any primary held in this State * *. * shall expend, or agree to expend, more than $25,000 in his campaign for nomination * * *."

§ 34-2001a (Acts 1943, pp. 480, 481) provides that "the hours for holding all general, special, and primary elections in the State of Georgia, shall be from seven o'clock A. M. to six o'clock P. M., according to the legal time prevailing in the State of Georgia, at all of the polling places where said elections are held. The provisions of this section shall not apply to municipal elections."

§ 34-3215a (Acts 1943, p. 347) provides that, "Immediately after the consolidation of the votes in any such primary election a certificate, showing the names of such candidates and the offices for which they are candidates, shall be filed in the office of the Secretary of State of this State; such certificate to be signed by the chairman and secretary of the State committee of the political party holding such primary."

It also requires the certificate to show, by counties, the total number of popular votes and the county unit votes received by each candidate in any such primary election.

Sections 34-3223 to 34-3236 are codified from the Acts of 1941 (pages 432 to 438).

§ 34-3223 provides, "The legislative intent and purpose of this law is to effectuate fair and honest primary elections for the nomination of candidates for public office in this State."

§ 34-3224 provides, "The provisions of this law shall apply to all primary elections hereafter held in this State by any political party for the purpose of nominating candidates for Governor (and other Statehouse officers), and all such primary elections hereafter held for the nomination of any candidate for any State, county, district or national office required to be filled by election by the people of this State or any part thereof, whether such primary election

be held to nominate candidates for unexpired terms or full terms."

§ 34-3225 provides that, "Any defeated candidate in any such primary election who received thirty-three and one-third per cent. of the total vote cast in any county for the particular office for which he was a candidate, as determined by the result of the first count or canvass of the votes cast at any such primary election, or any defeated candidate for a State, national or district office, who may not have received such thirty-three and one-third per cent. of the total vote cast in the county or the district but who received one-third as many votes as the leading candidate but who may bona fide contend that a recount of the ballots in any county will change the announced result of the primary election in the State or district wherein he was a candidate for such nomination, shall have the right to demand of the county executive committee of any such county or other authority conducting such primary election, a recount of the ballots cast in such election for the particular office for which he was a candidate. Such demand shall be filed with the chairman of the county executive committee within 48 hours after the announcement of the result of such primary election by the county executive committee, if such defeated candidate is a resident of the county wherein the recount is demanded, and if a nonresident of the county, within 96 hours after the announcement of such result. The demand shall be in writing and signed by such candidate if he is a resident of the county and by some one by him thereunto lawfully authorized if he is not a resident of the county. Any such candidate who is a nonresident of the county where a recount of the ballots is demanded shall have a right to designate a representative in any such county to enter such demand on his behalf. Such demand shall state the total number of ballots cast for the particular office for which such candidate was a candidate and the number of ballots cast for such defeated candidate according to the declared result, and that such defeated candidate bona fide believes that a recount of the ballots would change the announced result of the election in such county."

§ 34-3226 provides that when such demand for recount is filed, it is the duty of the executive committee of the county or the chairman thereof to grant the recount and to notify all candidates voted for at the primary of the demand for the recount and to fix a time and place for conducting a recount, providing 48 hours' notice to all candidates.

§ 34-3227 provides that the successful candidate and the contesting candidate shall each select a representative to act as a member of the committee to conduct the recount of the ballots and "the judge of the superior court of the judicial circuit adjoining that in which such county is located shall be the third member of the committee to conduct such recount."

§ 34-3228 provides what shall be done in the recount and the committee constituted to conduct the recount is given authority to subpoena witnesses and the records, and requires that the subpoenas for the same be furnished by the sheriff of the county. The committee has the right to hear witnesses, administer oaths to witnesses, and to certify to the judge of the superior court of the circuit in which the recount is conducted for punishment for contempt any witness who has failed to appear at such proceeding for the recount of said ballots, or for refusal of a witness to testify, or any other misbehavior or other unlawful conduct at such proceeding. This section further provides that the judge of the superior court shall punish any such party so certified as for contempt of court.

§ 34-3229 sets forth the power of the committee in conducting the recount.

§ 34-3230 provides for the production of tally sheets, registration lists, ballots cast and other records of the primary elections for the use of the committee.

§ 34-3231 provides for the inspection of records, and § 34-3232 for the postponement or continuance of the recount, in the discretion of the committee. § 34-3233 provides that the majority of the committee shall constitute a quorum, and the superior court judge serving as chairman of the committee and presiding at the meeting.

§ 34-3234 provides for the report of the committee within 24 hours after the recount of the ballots and the public announcement of the result, reducing the same to writing and filing a report thereof with the executive committee, and with the chairman of the State executive committee; and providing further that the report and findings of such committee on such recount shall be final.

§ 34-3236 provides that, "In the event the executive committee of said county or other authority conducting and holding said pri-

mary election should fail or refuse to adopt * * *. the report and findings of such committee conducting said recount of the ballots * * *, · then the candidate for office whose rights may be affected by the failure or refusal of such executive committee or other authority to abide by such report of such committee shall have the right to proceed by mandamus or appropriate legal or equitable remedy in the courts of this State to enforce the report and findings of such committee conducting the recount of the ballots as herein provided. Jurisdiction to hear and determine such cause is hereby conferred upon the superior courts of the State, notwithstanding the political nature of any such controversy."

In addition to all of the foregoing, by Act of the Legislature, approved January 7, 1944, Laws 1944, Ex.Sess., p. 2 (not yet codified), the primary and election laws of Georgia were implemented. Section 1 declares, "The purpose of this Act is to make provision for Georgia men and women in the military service of the United States to participate in County, State, and National Elections, and in Party Primaries in liberalizing the statutes of this State and by making provision for such participation."

Section 3 provides, "The State Selective Service, all military organizations, and citizens of this State are charged with the duty of cooperating with election and party officials in carrying out the purpose of this Act."

Section 5 provides, "The Tax Collectors or Tax Commissioners of the several counties shall provide for the military a registration card, in form as follows" (Form set out) * * *

The section further provides, "Any member of the military, his relative or friend, is authorized at any time to request from the Tax Collector or Commissioner the aforesaid registration card and in making said request shall furnish the name and address of the military member, and upon receipt of such request it shall be the duty of the Tax Collector or Commissioner to send the same to the member of the military; and the Tax Collector or Commissioner shall number the said registration forms and shall keep a permanent record book in his office in which he shall record the number of the card, the name of the member of the military for whom the reg-

istration card is sought, the name and relation, if any, of the person requesting the card, and the date the card is furnished, and such other information necessary to identify said registrant * * *. The member of the military receiving and executing the aforesaid registration card shall place the same in an envelope addressed to the Tax Collector or Commissioner of his County, and mail the same. * * * When such registration is completed, signed and returned to the Tax Collector or Tax Commissioner of the County it shall by him be placed in a suitable permanent record book and form a part of the voters' registration list. Upon receipt by the Tax Collector or Commissioner of the said registration, the name of the member of the military so registering shall be placed upon the registration list as an elector and registered voter, and shall be certified as such by the Registrars; provided, however, the said member of the military is otherwise qualified."

Section 8, paragraph 2, provides that, "Whenever any political party shall hold primary elections for nomination of candidates for office for Governor, State House Officers, Members of Congress, United States Senators (and other state offices), which are by law voted on one and the same day throughout the State, said primary may be held on such date as may be fixed by the State Executive Committee of such party, and the State Executive Committee is authorized to fix such time for the said primary, second primary, or party convention as it may determine without respect to the time now provided by law as the date on which the said primary, second primary, or convention shall be held."

Section 13 provides, in part, as follows: "It shall be the duty of the County Registrars in any primary election held by any political party for the nomination of candidates for the office for Governor, State House Officers, Members of Congress, United States Senators (and other state offices), to furnish to any member of the military who is a registered and qualified voter, and who is a member of the political party holding the said primary a ballot for the use of the military voter who is a member of the said political party in casting his vote in the said primary election."

Section 16 provides: "It shall be the duty of the Ordinary in case of general elections, and the duty of the County Registrars

in case of primary elections, to receive all ballots from members of the military up to and including the election hours of the day of the election and to keep the said military ballots in a safe and private place unopened until the day of the election. Upon receipt of the ballot by the Ordinary or the County Registrars, as the case may be, the said official shall write the date of the receipt of the said military ballot on the envelope containing same. On the day of the election such official shall, in the presence of the election managers, open the envelope containing the military ballot, determine the name of the voter casting the same and record the receipt of his said ballot, and the date received, in the permanent record book maintained by the said official for such purpose. The election managers shall then determine from the list of registered and qualified voters the eligibility of the military voter in question to cast the said ballot and, if found properly registered and qualified, the Ordinary or the County Registrars, as the case may be, shall deposit the ballot in the regular ballot box with the approval of the election managers."

Section 17 provides: "It shall be the duty of the Board of Registrars to make and file with the election managers of the precinct in which the court house of the county is located a full and complete list of registered and qualified voters for the entire county."

Section 18 provides: "There is hereby created a State War Ballot Commission composed of the Governor, the President of the Senate, the Speaker of the House, the Attorney General, and the Secretary of State, which said Commission is authorized and empowered to make any and all provisions and regulations necessary to effectuate the operation of this Act and to cooperate with federal authorities in facilitating and expediting the handling of registration and balloting by military voters. The said War Ballot Commission is also directed to cooperate with State, County and political party officials in all matters relating to the registration and voting of members of the military in elections and party primaries. The said Commission is also empowered and authorized to settle and determine all questions of law, procedure and regulation governing the registration and voting of persons in the military."

Section 20 provides: "All expense in connection with the mailing of registration cards and ballots to members of the military as provided in this Act shall be borne by the counties."

Section 21 provides: "The terms and provisions of this Act shall expire and become extinguished upon the convening of the General Assembly in regular session next after the termination of the present war."

It should be noted here that the provisions of this Act were of full force and effect on July 4, 1944.

In addition to all of the foregoing statutes touching primary elections, it is well to note that the State of Georgia applies criminal sanctions on violations of its election laws. Those that relate specifically to primary elections are as follows:

"§ 34-9922. Any manager of a primary election, who shall be guilty of wilfully violating any of the duties and obligations devolving upon him as such manager, shall be punished as for a misdemeanor."

"§ 34-9923. Any manager of a primary election or clerk of the superior court, who shall violate the provisions of sections 34-3204 to 34-3209 or 34-3211, relating to primary elections, shall be guilty of a misdemeanor."

"§ 34-9924. Any manager of a primary election, who shall be guilty of fraud or corruption in the management of an election, shall be punished as for a misdemeanor."

"§ 34-9925. Any voter at a primary election, who shall, if challenged, swear falsely in taking the prescribed oath, or shall personate another and take the oath in his name in order to vote, shall be guilty of perjury, and shall be punished as for perjury."

"§ 34-9926. Any person who shall either buy or sell, or offer to buy or sell, or be in any way concerned in buying or selling, or contribute money for the purpose of buying a vote in any primary election, whether the election shall be for nominees for State, county, municipal, or Federal office, shall be guilty of a misdemeanor."

"§ 34-9928. Any person who shall vote at a primary election more than once or at more than one polling place, shall be guilty of a misdemeanor."

"§ 34-9929. Any person attempting to aid or abet fraud in connection with any vote cast, or to be cast, or attempted to be cast, under the provisions of Chapter 34-33,

regulating voting by mail, shall be guilty of a misdemeanor."

§ 34-9933, codified from the Acts of 1939, page 309, provides: "All penal laws of the State of Georgia relating to illegal practices in general elections are hereby extended to all primary elections held for State, county, or municipal offices in the State of Georgia."

§ 34-9934 provides: "Any person who at any primary election or election of any kind, by ballot, within this State, shall sign the voters identification book, for the purpose of fraudulently obtaining a ballot, representing himself or herself to be a different person and representing that he or she is the person whose name he or she signs, whether said person so impersonated be living, deceased or a fictitious person, shall be guilty of forgery and punished as for a misdemeanor." (Acts 1941, pp. 429, 431.)

In United States v. Classic et al. (Louisiana), 313 U.S. 299, 61 S.Ct. 1031, 85 L. Ed. 1368, and Smith v. Allwright (Texas), 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987, 151 A.L.R. 1110, the Supreme Court reviewed and passed upon the primary election systems of Louisiana and Texas.

In the Classic case it was said (page 318 of 313 U.S., page 1039 of 61 S.Ct., 85 L.Ed. 1368): "Where the state law has made the primary an integral part of the procedure of choice, or where in fact the primary effectively controls the choice, the right of the elector to have his ballot counted at the primary is likewise included in the right protected by Article I, § 2 (of the Constitution). And this right of participation is protected just as is the right to vote at the election, where the primary is by law made an integral part of the election machinery, whether the voter exercises his right in a party primary which invariably, sometimes or never determines the ultimate choice of the representative."

In the Allwright case, speaking of the Texas system, it was said (page 663 of 321 U.S., page 765 of 64 S.Ct., 88 L.Ed. 987, 151 A.L.R. 1110): "We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the state in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party. The plan of the Texas primary follows substantially that of Louisiana, with the exception that in Louisiana the state pays the cost of the primary while Texas assesses the cost against candidates."

Speaking further of primaries generally, the court said (page 664 of 321 U.S., page 765 of 64 S.Ct., 88 L.Ed. 987, 151 A.L.R. 1110):

"When primaries become a part of the machinery for choosing officials, state and national, as they have here, the same tests to determine the character of discrimination or abridgement should be applied to the primary as are applied to the general election. If the state requires a certain electoral procedure, prescribes a general election ballot made up of party nominees so chosen and limits the choice of the electorate in general elections for state offices, practically speaking, to those whose names appear on such a ballot, it endorses, adopts and enforces the discrimination against Negroes, practiced by a party entrusted by Texas law with the determination of the qualifications of participants in the primary. This is state action within the meaning of the Fifteenth Amendment. Guinn v. United States, 238 U.S. 347, 362, 35 S.Ct. 926, 930, 59 L.Ed. 1340, L.R.A.1916A, 1124.

"The United States is a constitutional democracy. Its organic law grants to all citizens a right to participate in the choice of elected officials without restriction by any state because of race. This grant to the people of the opportunity for choice is not to be nullified by a state through casting its electoral process in a form which permits a private organization to practice racial discrimination in the election. Constitutional rights would be of little value if they could be thus indirectly denied. Lane v. Wilson, 307 U.S. 268, 275, 59 S.Ct. 872, 876, 83 L.Ed. 1281.

"The privilege of membership in a party may be, as this Court said in Grovey v. Townsend, 295 U.S. 45, 55, 55 S.Ct. 622, 626, 79 L.Ed. 1292, 97 A.L.R. 680, no concern of a state. But when, as here, that privilege is also the essential qualification for voting in a primary to select nominees for a general election, the state makes the action of the party the action of the state."

It is true that the statutes of Louisiana and Texas require the holding of a primary, while there is no such statutory

requirement in Georgia. However, a fair consideration of the foregoing Georgia statutes leads to the conclusion that whenever a political party holds a primary in this state, it is by law an integral part of the election machinery. Once a decision to hold a primary is made, the statutes of Georgia take hold and direct every essential step from registration and qualification of voters to the placing of the names of the nominees on the general election ballot. The state by statutes invests the party authorities with the power to formulate rules and regulations for holding the primary, and thus empowers the party to provide by regulation and rules for details which are not specifically covered by statutes. (§ 34-3209; Section 18, Act of January 7, 1944.) It was under this statutory authority that the Democratic Executive Committee on January 27, 1944 determined to hold a primary, fixed the date of July 4, 1944, and prescribed regulations and limited the participant voters to white qualified electors. This is an adoption by the state of party action and such action is state action.

The Democratic Party is the dominant and controlling political party in Georgia. No other party has held a statewide primary during the past 40 years. Since 1900 Democratic nominees for United States Senator, members of the House of Representatives, Governor, and other Statehouse officers, nominated at primaries, have been elected in the ensuing general election. The nominees at the 1944 Primary were so elected.

So, we conclude from this long established practice that the primary is in fact an integral part of the electoral process of this state. It may fairly be said that it is the hub of the process. When the Democratic Party holds a primary in this state, the system is substantially the same, in substance and objective, as the Texas and Louisiana systems.

As I understand the holding and the meaning of Smith v. Allwright, it is controlling here.

■ The defendants acting as the duly constituted authorities of the Democratic Party, in refusing to permit plaintiff to vote in the Primary of July 4, 1944, solely on account of his race and color, deprived the plaintiff of a right secured to him by the Constitution and laws of the United States, and was in violation of the Fourteenth, Fifteenth and Seventeenth Amendments.

Plaintiff has a cause of action and is entitled to recover. Appropriate orders will be entered.

After a full consideration of the facts, as stipulated by the parties, arguments and briefs of counsel, the court makes the following findings of fact, conclusions of law, and judgment in the above case.

### Findings of Fact

The facts are found to be as stipulated by the parties.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter in this cause.

2. The holding of the Democratic Primary election in Muscogee County and the State of Georgia on July 4, 1944, for the nomination of a candidate for United States Senator and members of the House of Representatives, to be voted on in the general election in said year, was by law an integral part of the electoral process of the State of Georgia.

3. The holding of said primary was action by the State of Georgia, acting through the Democratic Party as its instrumentality.

4. Plaintiff's right to vote in said primary election is a right secured to him by the Constitution and laws of the United States.

Defendants, acting as the duly constituted authorities of the Democratic Party, in refusing to permit plaintiff to vote in said primary election solely on account of his race and color, deprived the plaintiff of a right secured to him by the Constitution and laws of the United States, and was in violation of the Fourteenth, Fifteenth and Seventeenth Amendments.

6. Plaintiff has a cause of action and is entitled to recover of the defendants damages in the amount stipulated by the parties.

### Judgment

Whereupon, it is considered, ordered and adjudged that the plaintiff do have and recover of the defendants the sum of $100, as stipulated by the parties, together with future interest thereon at the rate of 7 per cent. per annum, and the costs of this proceeding to be taxed by the clerk.