### LANE v. WILSON et al.

### No. 1635.

Circuit Court of Appeals, Tenth Circuit.

Sept. 19, 1938.

Charles A. Chandler, of Muskogee, Okl., for appellant.

Gordon Watts, of Wagoner, Okl., and Joseph C. Stone, of Muskogee, Okl. (Charles G. Watts, of Wagoner, Okl., on the brief), for appellees.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

Appellant, a negro man, brought this action against the three appellees to recover from them $5,000, for that, as averred, they prevented his registration as an elector at the general election in November, 1934, because of his race and color. He was born in Alabama, but his residence has been in the village of Red Bird, Wagoner County, Oklahoma, since 1908 under claim of citizenship. He testified he voted in Oklahoma in 1910 and 1912, but did not vote thereafter because he did not register. He claims all the qualifications of an elector in Oklahoma (Oklahoma Constitution, Article 3, Section 1, Okl.St.Ann.Const. art. 3, § 1), and there is no denial of his right to vote if registered.

The complaint is an attack on the Oklahoma statute providing for registration as a condition precedent to the right to vote. The act was passed in February, 1916. It is said that prior thereto Oklahoma had no requirements of registration throughout the state. Anticipating the election to be held on November 6, 1934, appellant on October 24, 1934, in company with several other negroes applied for registration to Marion Parks, registrar in appellant's voting precinct in Wagoner County, and was refused. Appellant testified that Parks told him he "was instructed by the higherups not to register any colored people"; that Parks stated the higherups were Jess Wilson, county registrar, and John Moss, county judge. Three days thereafter he filed this suit. At the conclusion of all the evidence each side moved for an instructed

verdict, and the Court ruled in favor of appellees.

The registration provisions and requirements applicable here are found in Volume 1, Article 3, Chapter 29, Oklahoma Statutes 1931, § 5651 et seq., 26 Okl.St.Ann. § 71 et seq. It is referred to in the act itself as providing for a permanent record of all electors in the state, and it defines elections:

"to mean every general, primary, regular, or special election held in this state, or in any county, city, town, township, school district, or precinct for the nomination or election of federal, state, district, county, municipal, township, school district, or precinct officers, including United States Senators and members of Congress, and upon any issue submitted to the people of the State or any municipality or subdivision of the State." Section 5651, 26 Okl.St. Ann. § 71.

Section 5652, 26 Okl.St.Ann. § 72, is this:

"It shall be the duty of every qualified elector in this state to register as an elector under the provisions of this Act, and no elector shall be permitted to vote at any election unless he shall register as herein provided, and no elector shall be permitted to vote in any primary election of any political party except of the political party of which his registration certificate shows him to be a member."

The next section (section 5653, 26 Okl. St.Ann. § 73) provides that the Secretary of the State Senate shall within 60 days after the act becomes effective appoint one qualified elector in each county as county registrar, and the county registrar so appointed shall immediately appoint precinct registrars in each precinct within his county, who shall be a qualified elector and who shall be the official registration officer in his precinct. He is empowered to administer oaths and to exercise all the authority conferred upon precinct registrars by the act. County registrars hold office at the pleasure of the Secretary of the State Senate, and the precinct registrars hold office at the pleasure of the county registrars.

Section 5654, 26 Okl.St.Ann. § 74, provides:

"It shall be the duty of the precinct registrar to register each qualified elector of his election precinct who makes application between the thirtieth day of April, 1916, and the eleventh day of May, 1916, and such person applying shall at the time he applies to register be a qualified elector in such precinct and he shall comply with the provisions of this act, and it shall be the duty of every qualified elector to register within such time; provided, if any elector should be absent from the county of his residence during such period of time, or is prevented by sickness or unavoidable misfortune from registering with the precinct registrar within such time, he may register with such precinct registrar at any time after the tenth day of May, 1916, up to and including the thirtieth day of June, 1916, but the precinct registrar shall register no person under this provision unless he be satisfied that such person was absent from the county or was prevented from registering by sickness or unavoidable misfortune, as hereinbefore provided. And provided that it shall be the mandatory duty of every precinct registrar to issue registration certificates to every qualified elector who voted at the general election held in this state on the first Tuesday after the first Monday in November, 1914, without the application of said elector for registration, and, to deliver such certificate to such elector if he is still a qualified elector in such precinct and the failure to so register such elector who voted in such election held in November, 1914, shall not preclude or prevent such elector from voting in any election in this state; and provided further, that wherever any elector is refused registration by any registration officer such action may be reviewed by the district court of the county by the aggrieved elector by his filing within ten days a petition with the Clerk of said court, whereupon summons shall be issued to said registrar requiring him to answer within ten days, and the district court shall be a expeditious hearing and from his judgment an appeal will lie at the instance of either party to the Supreme Court of the State as in civil cases; and provided further, that the provisions of this act shall not apply to any school district elections. Provided further, 'that each county election board in this state shall furnish to each precinct election board in the respective counties a list of the voters who voted at the election in November, 1914, and such list shall be conclusive evidence of the right of such person to vote."

Section 5655, 26 Okl.St.Ann. § 75, makes it the duty of the county registrar

to furnish at the expense of the county the proper registration certificate books and supplies; provides how they shall be kept; that they shall be delivered to the registrar in each precinct who shall receipt for them, the receipts to be held at the office of the county registrar; provides how the registration books shall be marked, the form and contents of each registration certificate and duplicate of each certificate issued to be retained in said books after they are filled in by the precinct registrar with indelible pencil, the issued registration certificate to be signed by the precinct registrar.

Section 5657, 26 Okl.St.Ann. § 77, provides in part:

"Each qualified elector in this State may be required to make oath that he is a qualified elector in such precinct, and shall answer under oath any questions touching his qualifications as an elector and give under oath the information required to be contained in a registration certificate. Except in the case of a qualified elector who voted at the general election held in this state on the first Tuesday after the first Monday in November, 1914, in which case it shall be the mandatory duty of the precinct registrar to register such voter and deliver to such voter a registration certificate and the failure to so register such elector and to issue such certificate shall not preclude or prevent such elector from voting at any election in this State. If any person shall fail or refuse to give the information required in a registration certificate, or fail or refuse to answer any questions propounded to him by said registrar touching his qualifications as an elector, such person shall not be registered and no certificate of registration shall be issued to him. If said registrar shall be satisfied that any person who makes application to register is a qualified elector in the precinct at such time, and if such person complies with all of the provisions of this act, then said registrar shall detach the original registration certificate, properly filled in and containing the information required in this act, and deliver to such person such original registration certificate. * * * The precinct registrar shall retain in his possession all duplicate registration certificates and from such duplicate registration certificates shall make up a precinct registration book; such precinct registration book shall be substantially bound and shall be

in the form and contain the information hereinafter provided. Such books shall be furnished by the county registrar in each county for each election precinct. On the back of each of such books shall be written or printed the words: 'Precinct Register, Precinct No. ———, ——— County'."

This section further prescribes that each precinct registrar shall within ten days after the 20th day of June, 1916, and within ten days after any other registration deliver to the secretary of the county election board the duplicate registration certificates. The precinct registrar shall write his name at the time of delivery in ink upon each of said duplicate registration certificates immediately underneath the perforated edge of the stub from which the original registration certificate has been detached, and the secretary of the county election board is at the same time to place other marks of identification of said duplicate certificates. From these data the secretary of the county election board is required to make up a county registration book as a permanent record of the electors showing in alphabetical order and by precinct the name of each elector registered and the date of his registration, his age, residence, occupation, race, politics, and the number of his registration certificate as shown by the duplicate registration certificate of each precinct, and when he has completed the book file it with the county clerk of the county, that the book shall be a public record and the county clerk the custodian thereof.

Section 5658, 26 Okl.St.Ann. § 78, provides for the issuance of a new certificate where one already registered changes his residence to some other precinct or changes his politics.

Section 5659, 26 Okl.St.Ann. § 79, provides in part:

"Any person who may become a qualified elector in any precinct in this State after the tenth day of May, 1916, or after the closing of any other registration period, may register as an elector by making application to the registrar of the precinct in which he is a qualified voter, not more than twenty nor less than ten days before the day of holding any election and upon complying with all the terms and provisions of this Act, and it shall be the duty of precinct registrars to register such qualified electors in their precinct under the terms and provisions of this Act, beginning twen-

ty days before the date of holding any election and continuing for a period of ten days. Precinct registrars shall have no authority to register electors at any other time except as provided in this Act and no registration certificate issued by any precinct registrar at any other time except as herein provided shall be valid. After the close of registration ten days before any election as herein provided, and after the close of the registration of electors on June 30, 1916, or after the close of any other supplemental registration, the precinct registrar shall, immediately after the closing of such registration, enter upon the precinct register the names of all persons registered during such period hereinbefore provided, and shall deliver to the Secretary of the county election board the duplicate registration certificates so issued in the same manner as hereinbefore provided, and the secretary of the county election board shall receive such certificates, receipt for the same, and add the names of such electors in the county registration book in the same manner as hereinbefore provided. The permanent record of registrations made by the secretary of the county election board and filed with the county clerk shall be certified by the secretary of the county election board to be true and correct and when filed in the office of the county clerk shall be open to inspection by any person, and copies may be made of such record during the office hours of the county clerk, but in no case shall such permanent records be taken from the possession of said county clerk."

Section 5659, 26 Okl.St.Ann. § 79, provides for registration of newly qualified electors after the tenth day of May, 1916, or after the closing of any other registration period.

Section 5661, 26 Okl.St.Ann. § 81, provides a procedure for striking from the registration books the name or names of anyone illegally registered.

Appellant set forth in his complaint said sections 5654 and 5657, 26 Okl.St.Ann. §§ 74, 77, of the registration act and then alleged:

"Further plaintiff alleges, upon information and belief, that the above mentioned sections are mere subterfuges aimed exclusively and directly at and against Negro citizens of the United States residing in the State of Oklahoma, and further that said laws are and were designed for the exclusive purpose of depriving said Negro citizens of the right of suffrage, and in violation of Section 6, Article 1 of the Constitution of Oklahoma, Okl.St.Ann. Const. art. 1, § 6, and also in violation of the 15th Amendment of the Constitution of the United States, U.S.C.A.Const. Amend. 15, and in violation of the laws of the United States enacted pursuant thereto. Said statutes and laws are further an illegal and cunning attempt to achieve the illegal purpose sought by (The Amendment) Section 4a, Grandfather Clause of Article 3 of the Constitution of Oklahoma, Okl.St.Ann.Const. art. 3, § 4a, and to evade the effect of the decision of the Supreme Court of the United States, (Guinn v. United States, decided June 21st, 1915, 238 U.S.. 347, 35 S.Ct. 926, 59 L.Ed. 1340, L.R.A.1916A, 1124.) That said State Statutes designated for the purpose aforesaid were enacted on February 26, 1916, immediately after the above mentioned decision of the Supreme Court of the United States; and said laws provide for an unjust, unreasonable and illegal classification of the electors of the United States and of the State of Oklahoma; they give to precinct registrars therein provided for an arbitrary and capricious discretion to deny or refuse qualified Negro electors the right of suffrage; and said State laws deny and abridge the right of Negro citizens, including this plaintiff, to vote, solely on account of race, color and previous condition of servitude. That precinct registrars of Oklahoma in general in denying the right to register and the right of suffrage throughout said State of Oklahoma, and the defendants hereinabove named in denying and refusing to permit this plaintiff to register or vote, as hereinabove specified, were and are carrying out the patent and expressed intent and design of said State laws."

Preceding the copying in the complaint of the two sections of the statute (sections 5654 and 5657, 26 Okl.St.Ann. §§ 74, 77) it was alleged at length that a conspiracy was formed between county and precinct registrars and the county election boards to prevent by various devices and schemes the registration of negro voters solely on account of their race, color and previous condition of servitude; that the conspiracy was set in operation during the registration period in 1916 and has continued ever thereafter and still continues to operate, and thus negro residents of Wagoner County have been deprived of the right of

suffrage solely on account of their race, color and previous condition of servitude. The details of such conspiracy, particularly in the precinct in which appellant resides, are stated, such as the statement attributed to Marion Parks, registrar, on October 24, 1924, that he had been forbidden by the higherups to register any negroes, all of which was denied by answers and on the witness stand by appellees. Appellant also claimed that a man named Workman was precinct registrar in 1916 to whom he applied for registration and was not registered. It seems to be conclusively established by proof that Workman was not precinct registrar in 1916; that James L. Pace was registrar; and Pace and others so testified. Several registration certificates issued by Pace as registrar for that year were put in evidence. Workman seems to have been registrar in 1920.

Certainly there is nothing on the face of the registration statute that even tends to support appellant's claim of discrimination between white and negro electors, nor was there proof of the conspiracy charged. There was proof that but few negroes were registered in proportion to their population, but no proof of the number of qualified electors who applied and were refused. That was not within the compass of appellant's case. He seeks to have the entire statute avoided. Nor would it have supported his right to recovery. Appellant in his brief (p. 37) says this:

"The heart and essence of said registration laws, so far as the present question of constitutionality is concerned, is embodied in Sec. 5654, Oklahoma Statutes 1931, 26 Okl.St.Ann. § 74, set forth in full in this brief, and this entire controversy centers around the question whether said Sec. 5654 is unconstitutional, as violating the 14th and 15th Amendments to the Constitution of the United States, U.S.C.A. Const. Amends. 14, 15, * * *."

In Pope v. Williams, 193 U.S. 621, 24 S.Ct. 573, 48 L.Ed. 817, the court said [page 575]:

"In other words, the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, and upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals, in violation of the Federal Constitution."

Under section 5654 all who voted at the election in 1914 were placed on the registration books and certificates were issued to them by the registrars without applications therefor. It may be, and we take it as true, that inasmuch as the so-called grandfather clause in the Constitution of Oklahoma had not been declared void as violative of the Fifteenth Amendment until 1915 no negroes voted at the 1914 election, but at least many of them became qualified electors prior to the registration period in 1916, and Section 5652, 26 Okl.St.Ann. § 72, gave notice that no elector would be permitted to vote at any election unless he should register as provided by the act. There were probably also some whites who were qualified to vote at the 1914 election who did not vote. They were on the same footing as to registration as were the qualified negroes. There was no distinction between them. Any elector, white or negro, who applied and was denied registration, had the same right to carry the issue thus made to the Supreme Court for determination. That seems to have been the situation in Trudeau v. Barnes, 5 Cir., 65 F.2d 563, in which denial of relief such as sought here was adjudged against the plaintiff and certiorari denied. 290 U.S. 659, 54 S.Ct. 74, 78 L.Ed. 571.

After an attentive consideration of the whole act we are of the opinion that the trial court's disposition of the case should be affirmed. It is so ordered.