## LANE *v.* WILSON ET AL.

No. 460.   Argued March 3, 1939.—Decided May 22, 1939.

*Messrs. Charles A. Chandler* and *James M. Nabrit, Jr.* for petitioner.

*Messrs. Charles G. Watts* and *Joseph C. Stone,* with whom *Mr. Charles A. Moon* was on the brief, for respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The case is here on *certiorari* to review the judgment of the Circuit Court of Appeals for the Tenth Circuit affirming that of the United States District Court for the Eastern District of Oklahoma, entered upon a directed verdict in favor of the defendants. The action was one for $5,000 damages brought under § 1979 of the Revised Statutes (8 U. S. C. § 43), by a colored citizen claiming discriminatory treatment resulting from electoral legislation of Oklahoma, in violation of the Fifteenth Amendment. *Certiorari* was granted, 305 U. S. 591, because of the importance of the question and an asserted conflict with the decision in *Guinn* v. *United States,* 238 U. S. 347.

The constitution under which Oklahoma was admitted into the Union regulated the suffrage by Article III, whereby its "qualified electors" were to be "citizens of the State . . . who are over the age of twenty-one years" with disqualifications in the case of felons, paupers and lunatics. Soon after its admission the suffrage provisions of the Oklahoma Constitution were radically amended by the addition of a literacy test from which white voters were in effect relieved through the operation of a "grandfather clause." The clause was stricken down by this Court as violative of the prohibition against discrimination "on account of race, color or previous condition of servitude" of the Fifteenth Amendment. This outlawry occurred on June 21, 1915. In the meantime the Oklahoma general election of 1914 had been based on the

offending "grandfather clause." After the invalidation of that clause a special session of the Oklahoma legislature enacted a new scheme for registration as a prerequisite to voting. Oklahoma Laws of 1916, Act of February 26, 1916, c. 24. Section 4 of this statute (now § 5654, Oklahoma Statutes 1931, 26 Okla. St. Ann. 74) [1] was obviously

---

[1] "It shall be the duty of the precinct registrar to register each qualified elector of his election precinct who makes application between the thirtieth day of April, 1916, and the eleventh day of May, 1916, and such person applying shall at the time he applies to register be a qualified elector in such precinct and he shall comply with the provisions of this act, and it shall be the duty of every qualified elector to register within such time; provided, if any elector should be absent from the county of his residence during such period of time, or is prevented by sickness or unavoidable misfortune from registering with the precinct registrar within such time, he may register with such precinct registrar at any time after the tenth day of May, 1916, up to and including the thirtieth day of June, 1916, but the precinct registrar shall register no person under this provision unless he be satisfied that such person was absent from the county or was prevented from registering by sickness or unavoidable misfortune, as hereinbefore provided. And provided that it shall be the mandatory duty of every precinct registrar to issue registration certificates to every qualified elector who voted at the general election held in this state on the first Tuesday after the first Monday in November, 1914, without the application of said elector for registration, and, to deliver such certificate to such elector if he is still a qualified elector in such precinct and the failure to so register such elector who voted in such election held in November, 1914, shall not preclude or prevent such elector from voting in any election in this state; and provided further, that wherever any elector is refused registration by any registration officer such action may be reviewed by the district court of the county by the aggrieved elector by his filing within ten days a petition with the Clerk of said court, whereupon summons shall be issued to said registrar requiring him to answer within ten days, and the district court shall be a expeditious hearing and from his judgment an appeal will lie at the instance of either party to the Supreme Court of the State as in civil cases; and provided further, that the provisions of this act shall not apply to any school district elections. Provided further, that each county

directed towards the consequences of the decision in *Guinn v. United States, supra.* Those who had voted in the general election of 1914, automatically remained qualified voters. The new registration requirements affected only others. These had to apply for registration between April 30, 1916 and May 11, 1916, if qualified at that time, with an extension to June 30, 1916, given only to those "absent from the county . . . during such period of time, or . . . prevented by sickness or unavoidable misfortune from registering . . . within such time." The crux of the present controversy is the validity of this registration scheme, with its dividing line between white citizens who had voted under the "grandfather clause" immunity prior to *Guinn v. United States, supra,* and citizens who were outside it, and the not more than 12 days as the normal period of registration for the theretofore proscribed class.

The petitioner, a colored citizen of Oklahoma, who was the plaintiff below and will hereafter be referred to as such, sued three county election officials for declining to register him on October 17, 1934. He was qualified for registration in 1916 but did not then get on the registration list. The evidence is in conflict whether he presented himself in that year for registration and, if so, under what circumstances registration was denied him. The fact is that plaintiff did not get on the register in 1916. Under the terms of the statute he thereby permanently lost the right to register and hence the right to vote. The central claim of plaintiff is that of the unconstitutionality of § 5654. The defendants joined issue on this claim and further insisted that if there had been illegality

election board in this state shall furnish to each precinct election board in the respective counties a list of the voters who voted at the election in November, 1914, and such list shall be conclusive evidence of the right of such person to vote."

in a denial of the plaintiff's right to registration, his proper recourse was to the courts of Oklahoma. The District Court took the case from the jury and its action was affirmed by the Circuit Court of Appeals. It found no proof of discrimination against negroes in the administration of § 5654 and denied that the legislation was in conflict with the Fifteenth Amendment. 98 F. 2d 980.

The defendants urge two bars to the plaintiff's recovery, apart from the constitutional validity of § 5654. They say that on the plaintiff's own assumption of its invalidity, there is no Oklahoma statute under which he could register and therefore no right to registration has been denied. Secondly, they argue that the state procedure for determining claims of discrimination must be employed before invoking the federal judiciary. These contentions will be considered first, for the disposition of a constitutional question must be reserved to the last.

The first objection derives from a misapplication of *Giles* v. *Harris*, 189 U. S. 475. In that case a bill in equity was brought by a colored man on behalf of himself "and on behalf of more than five thousand negroes, citizens of the county of Montgomery, Alabama, similarly situated" which in effect asked the federal court "to supervise the voting in that State by officers of the court." What this Court called a "new and extraordinary situation" was found "strikingly" to reinforce "the argument that equity cannot undertake now, any more than it has in the past, to enforce political rights." See 189 U. S. at 487.[2] Apart from this traditional restriction upon the exercise of equitable jurisdiction there was another difficulty in *Giles* v. *Harris*. The plaintiff there was in effect asking for specific performance of his right under

---

[2] See also, *In re Sawyer*, 124 U. S. 200; *Walton* v. *House of Rep.*, 265 U. S. 487; 4 POMEROY, EQUITY § 1743 *et seq.;* Pound, Equitable Relief Against Defamation and Injuries to Personality, 29 HARV. L. REV. 640, 681.

Alabama electoral legislation. This presupposed the validity of the legislation under which he was claiming. But the whole theory of his bill was the invalidity of this legislation. Naturally enough, this Court took his claim at its face value and found no legislation on the basis of which specific performance could be decreed.[3]

This case is very different from *Giles* v. *Harris*—the difference having been explicitly foreshadowed by *Giles* v. *Harris* itself. In that case this Court declared "we are not prepared to say that an action at law could not be maintained on the facts alleged in the bill." 189 U. S. at 485. That is precisely the basis of the present action, brought under the following "appropriate legislation" of Congress to enforce the Fifteenth Amendment:

"Every person who, under color of any statute, . . . of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."[4]

---

[3] "If the sections of the constitution concerning registration were illegal in their inception, it would be a new doctrine in constitutional law that the original invalidity could be cured by an administration which defeated their intent. We express no opinion as to the alleged fact of their unconstitutionality beyond saying that we are not willing to assume that they are valid, in the face of the allegations and main object of the bill, for the purpose of granting the relief which it was necessary to pray in order that that object should be secured." 189 U. S. at 487. Recognition of the difference between an action for damages and the equitable relief prayed for in *Giles* v. *Harris* was repeated at the close of the opinion. See 189 U. S. at 488. Justices Harlan, Brewer, and Brown were of the opinion that it was competent for a federal court to grant even the equitable relief asked for in *Giles* v. *Harris*.

[4] The Act of April 20, 1871, c. 22, 17 Stat. 13, which became § 1979 of the Revised Statutes, and is now 8 U. S. C. § 43.

The Fifteenth Amendment secures freedom from discrimination on account of race in matters affecting the franchise. Whosoever "under color of any statute" subjects another to such discrimination thereby deprives him of what the Fifteenth Amendment secures and, under § 1979 becomes "liable to the party injured in an action at law." The theory of the plaintiff's action is that the defendants, acting under color of § 5654, did discriminate against him because that Section inherently operates discriminatorily. If this claim is sustained his right to sue under R. S. § 1979 follows. The basis of this action is inequality of treatment though under color of law, not denial of the right to vote. Compare *Nixon* v. *Herndon,* 273 U. S. 536.

The other preliminary objection to the maintenance of this action is likewise untenable. To vindicate his present grievance the plaintiff did not have to pursue whatever remedy may have been open to him in the state courts. Normally, the state legislative process, sometimes exercised through administrative powers conferred on state courts, must be completed before resort to the federal courts can be had. *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210. But the state procedure open for one in the plaintiff's situation (§ 5654) has all the indicia of a conventional judicial proceeding and does not confer upon the Oklahoma courts any of the discretionary or initiatory functions that are characteristic of administrative agencies. See Section 1 of Article IV of the Oklahoma Constitution; *Oklahoma Cotton Ginners' Assn.* v. *State,* 174 Okla. 243; 51 P. 2d 327. Barring only exceptional circumstances, see *e. g. Gilchrist* v. *Interborough Rapid Transit Co.,* 279 U. S. 159, or explicit statutory requirements, *e. g.* 48 Stat. 775; 50 Stat. 738; 28 U. S. C. § 41 (1), resort to a federal court may be had without first exhausting the judicial remedies of state courts. *Bacon* v. *Rut-*

*land R. Co.*, 232 U. S. 134; *Pacific Tel. & Tel. Co.* v. *Kuykendall*, 265 U. S. 196.

We therefore cannot avoid passing on the merits of plaintiff's constitutional claims. The reach of the Fifteenth Amendment against contrivances by a state to thwart equality in the enjoyment of the right to vote by citizens of the United States regardless of race or color, has been amply expounded by prior decisions. *Guinn* v. *United States*, 238 U. S. 347; *Myers* v. *Anderson*, 238 U. S. 368. The Amendment nullifies sophisticated as well as simple-minded modes of discrimination. It hits onerous procedural requirements which effectively handicap exercise of the franchise by the colored race although the abstract right to vote may remain unrestricted as to race. When in *Guinn* v. *United States*, supra, the Oklahoma "grandfather clause" was found violative of the Fifteenth Amendment, Oklahoma was confronted with the serious task of devising a new registration system consonant with her own political ideas but also consistent with the Federal Constitution. We are compelled to conclude, however reluctantly, that the legislation of 1916 partakes too much of the infirmity of the "grandfather clause" to be able to survive.

Section 5652 of the Oklahoma statutes makes registration a prerequisite to voting.[5] By §§ 5654 and 5659 [6] all

---

[5] "It shall be the duty of every qualified elector in this state to register as an elector under the provisions of this Act, and no elector shall be permitted to vote at any election unless he shall register as herein provided, and no elector shall be permitted to vote in any primary election of any political party except of the political party of which his registration certificate shows him to be a member." § 2, Oklahoma Laws of 1916, c. 24.

[6] "Any person who may become a qualified elector in any precinct in this State after the tenth day of May, 1916, or after the closing of any other registration period, may register as an elector by making application to the registrar of the precinct in which he is a qualified

citizens who were qualified to vote in 1916 but had not voted in 1914 were required to register, save in the exceptional circumstances, between April 30 and May 11, 1916, and in default of such registration were perpetually disenfranchised. Exemption from this onerous provision was enjoyed by all who had registered in 1914. But this registration was held under the statute which was condemned in the *Guinn* case. Unfair discrimination was thus retained by automatically granting voting privileges for life to the white citizens whom the constitutional "grandfather clause" had sheltered while subjecting colored citizens to a new burden. The practical effect of the 1916 legislation was to accord to the members of the negro race who had been discriminated against in the outlawed registration system of 1914, not more than 12 days within which to reassert constitutional rights which this Court found in the *Guinn* case to have been improperly taken from them. We believe that the opportunity thus given negro voters to free themselves from the effects of discrimination to which they should never have been subjected was too cabined and confined. The restrictions imposed must be judged with reference to those for whom they were designed. It must be remembered that we are dealing with a body of citizens lacking the habits and traditions of political independence and otherwise living in circumstances which do not encourage initiative and enterprise. To be sure, in exceptional cases a supple-

---

voter, not more than twenty nor less than ten days before the day of holding any election and upon complying with all the terms and provisions of this Act, and it shall be the duty of precinct registrars to register such qualified electors in their precinct under the terms and provisions of this Act, beginning twenty days before the date of holding any election and continuing for a period of ten days. Precinct registrars shall have no authority to register electors at any other time except as provided in this Act and no registration certificate issued by any precinct registrar at any other time except as herein provided shall be valid." § 9, Oklahoma Laws of 1916, c. 24.

mental period was available. But the narrow basis of the supplemental registration, the very brief normal period of relief for the persons and purposes in question, the practical difficulties, of which the record in this case gives glimpses, inevitable in the administration of such strict registration provisions, leave no escape from the conclusion that the means chosen as substitutes for the invalidated "grandfather clause" were themselves invalid under the Fifteenth Amendment. They operated unfairly against the very class on whose behalf the protection of the Constitution was here successfully invoked.

The judgment of the Circuit Court of Appeals must, therefore, be reversed and the cause remanded to the District Court for further proceedings in accordance with this opinion.

MR. JUSTICE MCREYNOLDS and MR. JUSTICE BUTLER think that the court below reached the right conclusion and that its judgment should be affirmed.

MR. JUSTICE DOUGLAS took no part in the consideration or disposition of this case.