**BYRD et al. v. BRICE.**
**Civ. A. No. 3122.**

United States District Court
W. D. Louisiana,
Shreveport Division.
April 18, 1952.

Stone, Lacour and Tate, Shreveport, La., for plaintiffs.

Ford E. Stinson, Benton, La., James E. Bolin, Springhill, La., Campbell & Padgett, A. M. Wallace, and R. H. Lee, all of Benton, La., and Louis Lyons, Bossier City, La., for defendant.

PORTERIE, District Judge.

The population of the Parish of Bossier, taken from the 1950 census of the United States, is 40,139. Of this number, there are 26,227 whites and 13,912 colored.

The record of this case shows that there are well over 9,000 white registered voters

in the Parish and not a single colored one. This is enough, taken arithmetically, to give the plaintiffs the injunction they seek.[1]

We find that the registrar of voters has failed in two serious ways to obey the law:

(a) She has made registration favorable beyond the average insofar as the white applicants be concerned; but, as to Negro applicants, she never has been of the thought or conviction that they should receive from the office of the registrar the same opportunity to become voters. In other words, she has discriminated against the colored voters.

(b) Section 37 of Title 18 of the Louisiana Revised Statutes of 1950, LSA–R.S. 18:37, reads as follows:

"The applicant shall in all cases be able to establish that he is the identical person whom he represents himself to be when applying for registration. If the registrar has good reason to believe that he is not the same person, he may require the applicant to produce two credible registered voters of his precinct to make oath to that effect."

In the case of colored applicants, she has rushed to the last sentence of Section 37: "If the registrar has good reason to believe that he is not the same person, he may require the applicant to produce two credible registered voters of his precinct to make oath to that effect."

She has failed to give any weight and consideration, when allegedly qualified Negroes applied to register, to the first sentence: "The applicant shall in all cases be able to establish that he is the identical person whom he represents himself to be when applying for registration."

The above two shortcomings of the registrar are repletely proved by the facts of the case. For some thirty-one years the registrar has failed to be able to establish the identity of a single colored person as she has been able to do nine out of ten times,

under her own admission in the case, of white applicants.

On the one hand, in the case of thousands of the white applicants she was able to know that they had given their correct names and also know that they lived in a certain precinct without having to require "two credible registered voters of his precinct to make oath to that effect." On the other hand, we are yet to find one colored applicant who has been able to make proof of his identity. The unwavering, immediate, and persistent requirement has been that the colored applicant had to get two credible registered voters of his precinct to appear and make oath, etc. The record fails to disclose (and that includes the testimony of all parties) of a single instance of a colored applicant ever getting even a blank in his hands to fill out as is the custom.

The first sentence of Sec. 37 was properly and fully used by the Registrar in dealing with the white applicants for registration. The command to her of this first sentence, however, was never used in a single instance when Negro applicants appeared. Her conduct to the Negro applicants was such as if this first sentence was never written. She applied to the Negro applicants only the second sentence. But the second sentence begins with an "if"; its provisions never come into play except upon the exhaustion of the provisions of the first. There was consistent and patent discrimination.

However, the injunction we shall grant has to be general in character and may not be specific in this particular case; that is, direct the registrar to register any one of the complainants here. The reasons therefor are, first, that the complainants have not been tested as to the several qualifications provided by the general law of the State; and, second, even if they had been, a direct mandate from us would be usurpation by us of the discretionary function of the registrar.

1. The Parish of Caddo, which borders geographically the Parish of Bossier— Red River only intervening on one boundary—, has a total registration of 52,989, out of which there are approximately 5,200 registered voters of the Negro race.

But, under this kind of mandate, the registrar will ask what is the exact meaning of the Court. Our answer is that the registrar must become convinced that the Negroes are entitled to the benefit of the same time and trouble she gives to the white applicants in her seeking to identify them. This, we think, will be an immediate solution of the situation.

All of the applicants in the instant case had no prior record at all, except one, and this prior record was not of a felonious character and dated back very many years. We must say also that these applicants were polite, reticent, and respectful.

 The defendant purports to be acting under the authority of Section 37 of Title 18 of the Louisiana Revised Statutes of 1950, LSA–R.S. 18:37; but the record discloses, as itemized above, that this statutory requirement is administered arbitrarily as a subterfuge for systematically excluding Negroes from the registration rolls, resulting in their being denied the right to vote solely on account of race or color. We find Section 37 of Title 18 of the Lousiana Revised Statutes of 1950, LSA–R.S. 18:37, when normally and properly used, quite constitutional.

The denial to the plaintiffs and other qualified Negroes of their right to register because of their race violates the Fourteenth and Fifteenth Amendments of the Constitution of the United States. Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987.

Statutes which appear fair on their face but whose application has the effect of denying to citizens the right to vote on account of race, color, or previous condition of servitude are within the prohibited sphere of the Fifteenth Amendment of the Constitution of the United States. Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340; Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281.

We cite the following cases in support of our declaration of the rights of these plaintiffs and others in Bossier Parish in like situation and in support of the judgment and writ that this Court will issue enjoining the defendant from denying the plaintiffs and other qualified Negroes the right to register to vote on account of race or color. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Baskin v. Brown, 4 Cir., 174 F.2d 391; Davis v. Schnell, D.C., 81 F.Supp. 872, affirmed 336 U.S. 933, 69 S.Ct. 749, 93 .L.Ed. 1093.

Should defendant be deemed to have violated state authority in administering the election laws, the Fourteenth and Fifteenth Amendments are applicable to abrogate her conduct. Yick Wo v. Hopkins, supra; Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Home Telephone & Telegraph Co. v. City of Los Angeles, 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368.

Defendant's purported justification on the basis that her acquaintance was the determinant and that she was better acquainted with white persons than with Negroes is unacceptable. Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839.

Let judgment, etc., be prepared by counsel for plaintiffs in conformity with the above opinion.