UNITED STATES of America,
Plaintiff,

v.

BIBB COUNTY DEMOCRATIC EXECUTIVE COMMITTEE et al.,
Defendants.

Civ. A. No. 1838.

United States District Court
M. D. Georgia,
Macon Division.

June 1, 1962.

Floyd M. Buford, U. S. Atty., Macon, Ga., Jerome K. Heilbron, Department of Justice, Washington, D. C., for plaintiffs.

Lawton Miller, Miller, Miller & Miller, Charles J. Bloch, Bloch, Hall, Groover & Hawkins, Macon, Ga., for defendants.

BOOTLE, Chief Judge.

This cause came on for hearing on May 23, 1962 upon the motion of the plaintiff, the United States of America, for a preliminary injunction; said plaintiff having on May 16, 1962 filed·a complaint pursuant to 42 U.S.C.A. § 1971, alleging that the defendants herein, the Bibb County Democratic Executive Committee and its individual members, and Walter C. Stevens, individually and as Ordinary of Bibb County, Georgia, have engaged in the past, and unless restrained, will continue to engage in the future, in acts and practices which deprive the qualified voters and citizens of Bibb County, Georgia, of the right to vote without distinction of race or color; that said acts consist of the practices of maintaining racial distinction in tabulating votes, in using voting facilities, accommodations, polling places, and casting ballots in elections in Bibb County, Georgia. The complaint concludes with a prayer that defendants be temporarily and permanently enjoined from engaging in such acts and practices.

After having considered evidence introduced by the parties at said hearing, and briefs submitted in support of their respective contentions, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The following named persons, each of whom resides in Bibb County, Georgia, constitute the entire membership of the Bibb County Democratic Executive Committee, hereinafter called the Committee, and the officers of the Committee are as designated:

Lawton Miller, Chairman
John B. Harris, Jr., Vice-Chairman
Gerald S. Mullis, Secretary
Fred W. Slaughter, Treasurer
Howard C. Neblett
George W. Lewis
James C. Moore
John R. Crandall
George C. Paul
Jesse A. Causey
Roy B. Rhodenhiser, Jr.
Thomas J. Doughman
Albert W. McKay
Walter Bragg
Robert Barfield
J. H. Horne
A. B. Minor
J. F. Brown
William C. Turner
Laris Burkhalter
Bernard Johnson
S. E. Dyer
J. R. Henderson
L. A. Garrard
W. J. Sanders
Emory Clay, Jr.
Claude Hollis

2. The Committee, as authorized by the laws of the State of Georgia, through its officers and members makes arrangements for, controls, manages and conducts Democratic primary elections in Bibb County, Georgia.

3. Walter C. Stevens is the Ordinary of Bibb County, Georgia, and is a resident of said county.

4. Walter C. Stevens, as Ordinary of Bibb County, Georgia, has the power and jurisdiction to establish, change, or abolish election precincts and has the duty, at the expense of the County, to provide at each polling place proper facilities as may be necessary to accommodate persons qualified to vote at such polling places, all as provided by Georgia law. As Ordinary of Bibb County, Georgia, he manages, organizes, and supervises Bibb County general and special elections.

5. By custom, usage, act and practice, the Committee has in the past engaged and, unless enjoined by this court, will in the future engage in the following acts and practices in conducting Democratic primary elections:

(a) Require qualified Negro voters who are residents of Bibb County, Georgia, and citizens of the United States to use polling places which are set

aside for the use of members of the Negro race only;

(b) Require qualified white voters who are residents of Bibb County, Georgia, and citizens of the United States to use polling places which are set aside for the use of white voters only;

(c) Require qualified Negro voters who are residents of Bibb County, Georgia, and citizens of the United States to vote at voting machines which are designated for and used by Negro voters only;

(d) Require qualified white voters who are residents of Bibb County, Georgia, and citizens of the United States to vote at voting machines which are designated for and used by white voters only;

(e) Tabulate and publish election returns on a racially designated basis.

6. Walter C. Stevens, as Ordinary of Bibb County, Georgia, has in the past engaged and, unless enjoined by this court, will in the future engage in the acts and practices set forth in paragraph 5(a) through (e) above in conducting general and special elections held in Bibb County.

7. In the last Bibb County Democratic primary election and Bibb County general election certain qualified Negro and white voters, in order to vote in certain precincts, had to vote at exclusively Negro or exclusively white polling places within the same precinct; that is, one such polling place was designated for and used by Negro voters only and the other such polling place was designated for and used by white voters only within the same precinct.

8. The defendants have made and are making plans and performing acts with the intent and purpose of holding the next Democratic primary election and the next general election in Bibb County in such a manner that the distinctions based on race or color set forth in paragraphs 5, 6, and 7 above, will be maintained in the voting and election process.

9. In order to abolish the distinctions based on race or color set forth hereinabove, it will be necessary that certain registered voters be notified that in the forthcoming aforementioned elections they will vote at specified polling places, which will not be designated on the basis of race or color. It is necessary that prior to the elections such voters be notified of the polling places where they will vote. Therefore, it is essential that the defendants act now to prepare to notify such voters where to vote and that the defendants abandon their plans and preparations to maintain the distinctions based on race and color, as set forth hereinabove.

10. On or about October 17, 1961, representative Negro citizens and voters of Bibb County, Georgia, in writing, requested that the defendant Committee discontinue the acts and practices as found in paragraph 5 above.

11. The next Democratic primary election in Bibb County, Georgia, is scheduled to be held on September 12, 1962.

12. The next general election in Bibb County, Georgia, is scheduled to be held on November 6, 1962.

13. Through the acts and practices as found herein, the plaintiff and citizens of the United States have suffered and will continue to suffer, if such acts and practices continue, irreparable injury, loss and damage and the public interest will be adversely affected.

14. It is neither impossible nor impracticable for the defendants to discontinue the acts and practices as found in paragraphs 5, 6 and 7 above at the times herein specified and in accordance with the decree to be entered herein.

15. The following tabulation shows the thirteen voting precincts of Bibb County, Georgia where primary, general and special elections are held, together with the number of white and Negro registered voters at each pre-

cinct in the 1961 special elections, the estimated number of white and Negro registered voters at each precinct for the approaching 1962 elections, and also the location of the voting places for each precinct, and for each race.

| | 1961 | | 1962 ESTIMATED | | VOTING PLACE |
|---|---|---|---|---|---|
| UPPER CITY: | W–1788 | | W–2100 | | W–Courthouse Lobby |
| | C –399 | 2187 | C –375 | 2475 | C–Courthouse first floor |
| LOWER CITY: | W–876 | | W–1042 | | W–City Hall Lobby |
| | C –409 | 1285 | C –490 | 1532 | C–City Hall first floor |
| E. M. #1: | W–3258 | | W–3910 | | W–Fort Hawkins School |
| | C –1158 | 4416 | C –1390 | 5300 | C–Burdell School |
| E. M. #2: | W–1656 | | W–1977 | | W–Alexander III School |
| | C – 280 | 1936 | C – 336 | 2313 | C–Henry Hunt School |
| V V #I: | W–4281 | | W–5137 | | W–Clisby School |
| | C –1361 | 5642 | C –1633 | 6770 | C–L. H. Williams School |
| V V #II: | W–4801 | | W–5760 | | W–Lanier Junior High School |
| | C –351 | 5152 | C –420 | 6180 | C–Fire Station at Pio Nona Ave. |
| GODFREY #I: | W–1141 | | W–1369 | | W–Burke School |
| | C – 537 | 1678 | C – 644 | 2013 | C–Tindall Heights Community Center |
| GODFREY #II: | W–4421 | | W–5305 | | W–Bruce School |
| | C – 138 | 4559 | C – 165 | 5470 | C–Southside Fire Station |
| GODFREY #III: | W–3547 | | W–4256 | | W–Willingham School |
| | C –1022 | 4569 | C –1226 | 5482 | C–Ballard-Hudson High School |
| HOWARD: | W–3804 | | W–4564 | | W–Alexander IV School Auditorium |
| | C – 115 | 3919 | C – 138 | 4702 | C–Alexander IV School Southeast Wing |
| RUTLAND: | W–1032 | | W–1238 | | W–Porter Ellis Community Center |
| | C – 10 | 1042 | C – 12 | 1250 | C–Porter Ellis Community Center |
| HAZZARD: | W– 489 | | W– 586 | | W–Union School |
| | C – 12 | 501 | C – 14 | 600 | C–Union School |
| WARRIOR: | W– 386 | | W– 463 | | W–Redding School |
| | C – 17 | 403 | C – 20 | 483 | C–Redding School |
| TOTALS: | | 37,289 | | 44,570 | |
| YEAR: | | 1961 | | 1962 | |
| | | June 28 | | May | |
| | | Coroner | | Estimated | |
| | | Sept 27 | | | |
| | | Sheriff | | | |

From the foregoing, it appears that the East Macon Militia District has been divided into two voting precincts, Vineville into two, and Godfrey into three. The creation of these additional precincts came about in this way, as is shown by the affidavit of the three Bibb County Registrars admitted into evidence without objection. In the year 1955 because of congestion at, and overcrowding of, the polls in East Macon, Godfrey and Vineville Militia Districts it became necessary that said Districts be subdivided and additional polling places established therein. On April 16, 1955, the Ordinary, pursuant to the provisions of Chapter 23–2 Ga.Code Ann., appointed a Commission to establish additional precincts in said three Districts. The Commission performed its duties expeditiously, making the surveys and causing the maps to be made of said precincts as required by law. After the Commission completed its duties the Registrars proceeded to ascertain the names and addresses of the persons who were registered and qualified to vote in each of said newly created precincts, and, subsequently, after this work was completed, compiled new registration lists by precincts in said three Militia Districts, and notified each voter in the newly created precincts by mail of the polling place at which each voter was to vote thereafter in primary, general and special elections conducted in Bibb County. Thus said three Militia Districts were subdivided into seven precincts, and two polling places were established in each of said seven precincts. The establishment of said new precincts resulted in much greater efficiency in the conduct of elections subsequently held. The proceedings to establish said new precincts began on April 16, 1955 and were completed on March 19, 1956, thus requiring a period of slightly more than eleven months. After the Commissioners had completed their surveys and prepared the maps as required by law, the time required by the Registrars to ascertain the names and addresses of the voters in each new precinct, to prepare the new registration lists and to notify each voter of the new location at which he was to vote in the future was in excess of six of the eleven months required to complete the entire proceeding. The total number of registered voters in Bibb County at the time of that proceeding was approximately 32,500, whereas the total number of registered voters presently is approximately 45,000. Because of the substantial increase in number of registered voters, in order to continue to conduct orderly and efficient primary, general and special elections in Bibb County it will be necessary that the Militia Districts of East Macon, Godfrey and Vineville be further subdivided and additional precincts created therein; and for the same reason the election officials contemplate establishing additional precincts in the Howard Militia District, which has not heretofore been subdivided. The plan contemplated by the Ordinary and the Chairman of the Bibb County Democratic Executive Committee calls for the creation of four or more additional precincts in the East Macon District, six or more additional precincts in the Godfrey District, seven or more additional precincts in the Vineville District, and the subdivision of the Howard District into two or more precincts. The establishment of these additional precincts will require the same type of proceeding as was conducted in 1955, and will require at least the same amount of time, namely, slightly more than eleven months.

Presumably, the use of two separate voting places in each of the seven precincts lying in the East Macon, Godfrey, and Vineville Districts was found to be necessary because of the number of registered voters in those precincts. Obviously, if it is necessary because of numbers that the people living in and throughout one geographical area be required to use more than one voting place some basis of division or classification must be adopted. That adopted here was race. That basis must fall. But when it does, some other basis must take its place unless all can be accommodated at one voting place, or the precinct be sub-

divided. The defendants contend, and have presented evidence tending to support their contention, that the voting places in these seven precincts would be too congested for the conduct of efficient and orderly elections if all the voters of each precinct are crowded into one voting place in one precinct. They contend also that any new basis of division or classification such as directing all those whose names begin with any letter from "A" through "M" to go to one voting place and those whose names begin with any letter from "N" through "Z" to another would lead to misunderstanding and confusion. This court is not prepared to say that were such instructions sent to 33,528 people (the estimated number of voters in said seven precincts) this would not be so.

As the testimony of the Registrars shows, the defendants have planned to meet this situation by further subdividing the East Macon, Godfrey, Vineville and Howard Districts, and this can be done within one year's time.

This court cannot overlook the magnitude of the task of holding an efficient and accurate election where great numbers are involved, the necessity for careful and accurate planning which must precede the same, and the care and attention which must accompany the entire voting process. The election officials in Bibb County are serving as host, so to speak, to approximately 45,000 people. First the guest list must be prepared with utmost care. It is the list of registered voters. The Registrars work almost continuously preparing it in accordance with minute requirements of the law. Then the guests, the registered voters, must be invited. The custom in this County seems to be, at least when any change occurs, to notify each registered voter by a postal card. Whether or not this is legally required it is certainly necessary at least to give notice to each registered voter in some way as to on what day and at what place he is to vote. Presently, there are thirteen precincts and twenty separate buildings at which voting occurs. It is essential that each voter appear at the proper place as he will there be checked against the guest list. Any misunderstanding among these 45,000 voters can create dissatisfaction and confusion. Moreover, the hosts must be prepared to receive their guests and accommodate them with voting facilities whenever they arrive, and the law permits them to arrive at their pleasure at any time between 7 A.M. and 6 P.M.

With respect to the seven precincts in the East Macon, Godfrey and Vineville Districts, this court deems it appropriate to let the injunction to be issued herein take effect one year from date, thus making it possible for the defendants to make only one overhauling of the election procedures in these seven precincts rather than having to make a hurried revamping on a temporary basis between now and September 12 of this year. This twelve months' delay will provide ample time and opportunity for a more or less permanent further subdividing of these seven precincts, if the defendants and other responsible officials continue to deem such further subdividing advisable, and will make it possible that there be only one re-shuffling of the voters in these seven precincts.

No necessity for delay exists with reference to the Upper City, Lower City, Howard, Rutland, Hazzard, or Warrior Districts or precincts because in each of them both races are already voting at the same building, although in Upper City, Lower City, and Howard in different parts of such building

CONCLUSIONS OF LAW

1. This court has jurisdiction over all the parties and the subject matter of this action. 42 U.S.C.A. § 1971; 28 U.S.C.A. § 1345.

2. Plaintiff has no adequate remedy at law.

3. The Fourteenth and Fifteenth Amendments to the Constitution of the United States, and 42 U.S.C.A. § 1971(a), forbid any distinction in the voting process based upon race or color irrespective of whether such distinction involves the actual denial of the vote.

See Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Sharp v. Lucky, 252 F.2d 910 (5th Cir. 1958); United States v. Raines, 189 F.Supp. 121 (M.D.Ga.1960); Anderson, et al. v. Courson, et al., 203 F.Supp. 806 (M.D.Ga. 1962).

4. The issuance of a preliminary injunction is necessary to prevent immediate and irreparable damage for the reason that the acts and practices of the defendants as found above in paragraphs 5, 6 and 7 of the court's Findings of Fact deprive citizens of the United States who are voters of Bibb County, Georgia of substantive rights secured to them by 42 U.S.C.A. § 1971 and the Fourteenth and Fifteenth Amendments to the Constitution of the United States, namely, the right to vote at all elections without distinction as to race or color.

Wherefore, it is ordered that a preliminary injunction be, and it hereby is, granted plaintiff against the defendants, and each of them, their agents, servants, employees, and all persons in active concert or participation with them, restraining them, and they are hereby preliminarily restrained and enjoined pending the determination of this action or until further order of this court, from engaging in any act or practice which would deprive any qualified voter and citizen of Bibb County, Georgia, of the right to vote without distinction of race or color, and from engaging in the act or practice of permitting or maintaining, at any election, racial distinction in any manner in tabulating votes, in using voting facilities, accommodations, polling places, and casting ballots in Bibb County, Georgia.

With respect to East Macon #1, East Macon #2, Vineville #I, Vineville #II, Godfrey #I, Godfrey #II, and Godfrey #III Militia Districts and precincts this injunction shall become effective one year from the date hereof and shall not apply to the Bibb County Primary election scheduled for September 12, 1962, nor to the general election to be held on November 6, 1962 with respect to said seven named Militia Districts and precincts. With respect to all other Militia Districts and precincts in Bibb County, Georgia, and including Upper City, Lower City, Howard, Rutland, Hazzard and Warrior Militia Districts and precincts, and with respect to any and all elections hereinafter held therein, including the Democratic primary scheduled for September 12, 1962 and the general election to be held on November 6, 1962, this injunction takes effect immediately upon its signing.