John Junior AMSLEY, Appellant,

v.

WEST VIRGINIA RACING COMMISSION, a Domestic Corporation, Joseph P. Condry, Chairman, W. P. C. Perry, Member, and Harry A. Wallace, Jr., Member, Appellees.

No. 11055.

United States Court of Appeals
Fourth Circuit.

Argued April 6, 1967.

Decided May 29, 1967.

E. F. Lark, Charles Town, W. Va., for appellant.

Thomas B. Yost, Asst. Atty. Gen. of W. Va. (C. Donald Robertson, Atty. Gen. of W. Va., on brief), for appellees.

Before BOREMAN, WINTER and CRAVEN, Circuit Judges.

BOREMAN, Circuit Judge.

Plaintiff, John Junior Amsley, a Pennsylvania resident, brought this action against the West Virginia Racing Com-

mission (hereafter Commission) in the federal district court for the Northern District of West Virginia seeking declaratory and injunctive relief for alleged constitutional deprivations. The Commission, assigning several grounds, moved for dismissal and the action was dismissed upon the sole ground that plaintiff had failed to exhaust his state administrative remedies. On appeal Amsley contends that it was not necessary to seek adjudication of federal constitutional questions in the state courts. We reverse and remand to the district court.

Following is a brief discussion of the underlying facts. Prior to September 21, 1960, Amsley was the holder of a West Virginia owner's license for horseracing issued to him by the Commission pursuant to statute.[1] On September 24, 1960, the stewards of the Shenandoah Downs Racetrack at Charles Town, West Virginia, acting on the basis of charges filed against plaintiff, suspended his license. He immediately appealed to the Commission and a hearing was held on November 1, 1960. The Commission upheld the stewards and the suspension of Amsley's license for a period of fifteen years. Amsley took no action with respect to his suspension until June 1965, at which time he sought reconsideration by the Commission of its earlier decision. The Commission agreed to reconsider but since Amsley offered no new evidence and did not attempt to refute the charges against him the Commission refused to disturb its 1960 decision. Amsley then brought this action, alleging jurisdiction based on diversity of citizenship and the involvement of an amount in excess of $10,000.00. In his complaint Amsley alleges that the procedure employed by the Commission resulted in the denial of his constitutional right to due process. The essence of his complaint is that when he originally appeared before the Commission in November 1960 he had engaged the services of an attorney from Washington, D. C., who was conversant with racing commission practices and procedures. However, the Commission refused to permit this attorney to represent plaintiff because he was not a member of the West Virginia bar. Amsley then asked for a continuance so that he might have time to obtain the services of a West Virginia attorney but his request was denied and the Commission proceeded to hold a hearing. Several witnesses were called by the Commission to give testimony against plaintiff. Although Amsley was present when this testimony was received, he was without counsel and was unable to cross-examine witnesses. He alleges that he was denied the constitutional right to counsel, to confrontation, and to proper, effective and adequate cross-examination.

The Commission moved to dismiss on the following grounds: (1) There was lack of proper venue; (2) plaintiff had failed to exhaust his state administrative remedies; (3) lack of diversity; (4) failure to state a claim upon which relief could be granted; and (5) absence of a federal question.

The district court, considering only exhaustion of remedies, granted the Commission's motion to dismiss. The court based its decision on the fact that the West Virginia statute authorizing the Commission to suspend and revoke licenses also confers a right to appeal from a decision of the Commission to the Circuit Court of the county wherein the hearing is held, and the further right to appeal from a decision of the Circuit Court to the Supreme Court of Appeals of West Virginia.[2] The court stated that "it appears manifest that the legislature intended the resort to the state courts as the natural evolution of the administrative remedy provided" and concluded by noting that Amsley had taken no appeal to the state courts.

We conclude that Amsley was not compelled to appeal the Commission's decision to the state courts as a prerequisite to resort to the federal court. In reaching this conclusion it is necessary to determine the nature of the

---

1. W.Va.Code, § 19–23–13 (1966).

2. W.Va.Code, § 19–23–6 (1966).

Commission's action, whether legislative or judicial.

The Commission as a creature of the legislature possesses certain delegated legislative or rule-making powers. However, it also possesses judicial or adjudicatory powers. The distinction between "legislative" or "administrative" action on the one hand and "judicial" action on the other is not always clear and is sometimes easier to state than to apply. However, Mr. Justice Holmes' definition of the distinction has been widely quoted:

> "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power." Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908). See Burrus and Teter, Antitrust: Rulemaking v. Adjudication in the FTC, 54 Geo.L.J. 1106–1107 (1966); Wright on Federal Courts, § 49, pp. 161–162 (1963 ed.).

■ In the instant case it seems fairly obvious that the Commission, in 1960, simply was exercising a judicial function in determining that Amsley's license should be suspended for past misconduct. Its decision affected no one but Amsley and had no future relevance. Again in 1965, upon the basis of past determined facts the Commission upheld and reaffirmed its earlier disposition of Amsley's case. Thereafter there was nothing left for Amsley to do before that body. There were no other procedures available which he could use to request the Commission to change its earlier decision. At that juncture he had the choice of appealing to the state courts, as provided by statute, or seeking redress in the federal courts.

■■ There is no requirement that a person aggrieved by a decision of a state administrative agency performing a judicial function must first apply for relief in the courts of that state. On the contrary, it is well settled that resort to a federal court may be had without first exhausting the judicial remedies of state courts. Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); Carson v. Warlick, 238 F.2d 724 (4 Cir. 1956). In Carson v. Warlick, this court held that after state administrative procedures had been utilized it was unnecessary to take an appeal through the state courts prior to seeking relief in the federal courts despite the fact that the statute creating the administrative body provided for an appeal to the state courts. Judge Parker, speaking for the court, noted that

> "the appeals to the courts which the statute provides are judicial, not administrative remedies and that, after administrative remedies  *  *  * have been exhausted, *judicial remedies for denial of constitutional rights may be pursued at once in the federal courts without pursuing state court remedies.* Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281." 238 F.2d at 729. (Emphasis supplied.)

It is only in exceptional circumstances,[3] or where there is a federal statutory requirement,[4] that it is necessary to exhaust state *judicial* remedies before resorting to the federal courts.

There are no exceptional circumstances present here which require interpretation of a complex state statute nor are there any federal statutes demanding the plaintiff should exhaust his state judicial remedies prior to resort to the federal courts. The issue is simply whether West Virginia, acting through the Commission, has violated

---

3. See Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652 (1929).

4. For example see 28 U.S.C. § 2254, 28 U.S.C. § 1341, 28 U.S.C. § 1342.

**818**

plaintiff's constitutional rights. We perceive no valid reason in these circumstances for denying plaintiff access to a federal forum on the ground of failure to exhaust state remedies.

The only authority cited and relied upon by the district court, Wilson v. West Virginia Board of Embalmers & Funeral Directors, 168 F.Supp. 753 (S.D.W.Va.1959), seems distinguishable on its facts. In that case the plaintiff had noted an appeal in the state courts from a decision of a state administrative agency as provided by statute but the state officer had failed to transmit the record to the circuit court and the appeal had not been docketed. It was then that plaintiff resorted to the federal court. However, the court did state that it regarded appeal to the circuit court as part of the administrative remedy provided by the state. This reasoning is rejected because it is in conflict with the holding of this court in Carson v. Warlick, supra, 238 F.2d 724.

■ Although the application of the doctrine of "abstention" was neither suggested nor urged in the pleadings, briefs or arguments, this court is aware that "abstention" is a judicially established device for according appropriate deference to the "respective competence of state and federal court systems." Louisiana Power & Light Co. v. Thibodaux City, 360 U.S. 25, 29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058 (1959). By way of dictum and with no obligation to consider this question not raised on appeal, we venture to assert our view that the doctrine of abstention is to be imposed sparingly, in rare circumstances, and its application would be inappropriate under the circumstances present in this case. To relegate to the state courts this plaintiff, who invokes federal jurisdiction on the basis of diversity of citizenship to redress alleged violations of constitutional rights, would serve no rational purpose. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). See Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50

(1965); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Martin v. State Farm Mutual Automobile Insurance Company, 375 F.2d 720 (4 Cir., decided March 16, 1967).

The judgment below is reversed and the case remanded for consideration and determination of the other grounds asserted in defendant's motion to dismiss and for such other and further proceedings as may be necessary or appropriate.

Reversed and remanded.