505 P.2d 22 (1973)
Delmer HARBOUR, Plaintiff-Appellant,
v.
The COLORADO STATE RACING COMMISSION, Defendant-Appellee,
F. Richard Hite et al., Defendants.
No. 72-117.
Colorado Court of Appeals, Div. I.
January 9, 1973.
Vranesic & Right, Paul E. Vranesic, Ben Klein, Denver, for plaintiff-appellant.
Duke W. Dunbar, Atty. Gen., John P. Moore, Deputy Atty. Gen., J. K. Kreutz, Asst. Atty. Gen., Denver, for defendant-appellee Colorado State Racing Commission.
Selected for Official Publication.
*23 COYTE, Judge.
Plaintiff, holder of an owner and trainer license issued by the Colorado Racing Commission, appeals a judgment of the district court affirming a ruling of the Colorado Racing Commission whereby plaintiff's license was suspended for a period of twelve months. Plaintiff's horse, "Snazzy Man," was the winner of the tenth race at the Rocky Mountain Quarter Racing Association on October 18, 1969. An analysis of a urine sample taken from the horse following the race was found to contain apomorphine, a drug which is a narcotic and a stimulant. The State Veterinarian testified that apomorphine is a drug which may not be administered to horses racing in the state of Colorado and that its use was contrary to the rules and regulations of the Colorado Racing Commission. The Commission found that the horse "Snazzy Man" had been stimulated with a forbidden narcotic, and that because there was no evidence indicating that plaintiff was without fault or blameless in the administration of the drug, plaintiff was in violation of Rules 11.14 and 11.15, as adopted by the Colorado Racing Commission. These rules are as follows:
"11.14Should the laboratory analysis of saliva, urine, or other sample taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant or local anesthetic, such shall be deemed evidence that the trainer of the horse is responsible for the administration of said drug. When the results of a positive analysis are received from the State Chemist the Stewards or their representatives shall immediately conduct a thorough investigation of the incident so as to determine who is responsible for the administration of said drug. Pending the Stewards formal hearing the Stewards may make such temporary order with regard to suspension of trainer, groom, owner or other persons as will protect the public. Said order shall be effective for a period not to exceed three days. Within three days of the receipt of a positive from the State Chemist, the Stewards shall hold a formal hearing to establish responsibility for the administration of said drug. At said hearing and any hearing before the commission the trainer of said horse shall be deemed responsible as set forth herein. Unless other evidence of sufficient credibility and weight is presented, the Stewards may make a finding in accordance with said evidence. If the Stewards or Commissioners are of the opinion that the evidence proves the trainer is without fault and is blameless in connection with the administration of said drug, the Stewards or Commissioners shall exonerate the trainer completely. The Stewards or Commissioners shall make such order or orders suspending or fining, or both, the person or persons found responsible, after the formal hearing, for the administration of said drug. The owner of such horse shall not participate in the purse distribution of that race."
"11.15The owner, trainer, groom or any other person having charge, custody or care of the horse is obligated to protect the horse properly and guard it against such administration or attempted administration, and if the Stewards shall find that any such person has failed to show proper protection and guarding of the horse, or if the Stewards find that any owner or trainer is guilty of negligence with respect thereto, they shall impose such punishment and take such other action as they deem proper under any of the rules including reference to the Commission."
Plaintiff contends that the Racing Comsion failed to comply with certain provisions of the Administrative Code and that Rules 11.14 and 11.15 of the Racing Commission are unconstitutional delegations of power. Plaintiff concludes that therefore the Commission was without authority to suspend his license. We disagree, and affirm the judgment of the district court.
*24 The plaintiff asserts several alleged violations of the Administrative Code. He complains of the absence of a sworn complaint setting forth the details of the charges against the plaintiff. 1969 Perm.Supp., C.R.S.1963, 3-16-3(5), provides that proceedings for the suspension of a license may be commenced by the agency upon its own motion or by the filing of a written complaint with the agency. The Racing Commission was authorized to proceed by ordering a hearing solely on its own motion. Colorado Racing Commission v. Conner, 30 Colo.App. 72, 490 P.2d 75.
The hearing before the Racing Commission was subsequent to hearing before the Board of Stewards wherein plaintiff appeared and was apprised of the charges. The Board of Stewards suspended plaintiff, and plaintiff, by his attorney, requested a hearing "at as early a date as possible concerning said suspension" before the Racing Commission. That request was granted and plaintiff's attorney was notified of the time, date and place of the hearing as well as the rules of the Racing Commission which plaintiff was charged with violating. The plaintiff had adequate notice of the hearing and its purpose. Since the promptness of the hearing was in accordance with plaintiff's request that it be held at "as early a date as possible," plaintiff's complaint that the Commission did not wait the 20 days prescribed in the code will not now be heard.
At the hearing before the Commission, plaintiff's attorney made an oral request for a bill of particulars on the charges. The chairman denied the request, stating that plaintiff had adequate knowledge of the matters to be presented. The agency and hearing officer have authority to dispose of motions relating to discovery. 1969 Perm.Supp., C.R.S.1963, 3-16-4(4). We perceive no abuse of discretion in the disposal of plaintiff's oral motion made to the Commission.
Plaintiff complains that exhibits introduced into evidence before the Commission were copies and that it was error to introduce these copies when objection was made that the exhibits were hearsay and not the best evidence. 1969 Perm.Supp., C.R.S.1963, 3-16-4(7), calls for a relaxation of the rules of admissibility in administrative hearings:
"(7) Except as otherwise provided by statute, the proponent of an order shall have the burden of proof, and every party to the proceedings shall have the right to present his case or defense by oral and documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. Subject to these rights and requirements, where a hearing will be expedited and the interests of the parties will not be substantially prejudiced thereby, a person conducting a hearing may receive all or part of the evidence in written form. The rules of evidence and requirements of proof shall conform, to the extent practicable, with those in civil nonjury cases in the district courts. However, when necessary to do so in order to ascertain facts affecting the substantial rights of the parties to the proceeding, the person so conducting the hearing may receive and consider evidence not admissible under such rules, if such evidence possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs. . . ." (Emphasis added.)
The exhibits were properly identified as copies of the originals, and contained information having "probative value commonly accepted by reasonable and prudent men in the conduct of their affairs."
Rules 11.14 and 11.15 create a presumption that the drug was administered either by plaintiff or with his knowledge and consent. When the presumption has arisen, it is incumbent upon plaintiff to produce evidence to rebut this presumption. By C.R.S.1963, 129-2-4, the Commission is authorized to make reasonable rules and *25 regulations for the control, supervision, and direction of licensees, including regulations providing for suspending such licensees. The Commission is further charged with the duty to license, regulate and supervise all race meets and specifically to take saliva or urine samples from the horses. C.R.S.1963, 129-2-5. The issue is whether the rules promulgated thereunder were so arbitrary and unreasonable as to constitute a deprivation of due process. The reasonableness of such rules have given rise to considerable litigation throughout the country. A review of these cases is found in a recent Ohio Appellate case, Thorne v. Ohio State Racing Commission, Ct.App. for Franklin County, Ohio, June 27, 1972, 72AP-37, wherein the court stated, in discussing rules similar to those under consideration here:
"The laws of this state relating to the conduct of horse racing, and the regulations as reasonably promulgated thereunder, fundamentally serve the salutory (sic) purpose of protecting the public.
The element of fairness in the pursuits of the horse racing industry necessitates the placing of certain responsibilities upon those best able to see that sound and fair practices are carried out in and about the racing process.
We must concede that in certain instances the placing of such responsibility upon some individuals such as is placed upon the trainers by the instant `insurer rule' may occasion certain hardships. However, in all instances sound public policy does not assure exacting justice.
. . . . . .
There was no dispute about the fact that the drug was found within the horse. Also, there was unrebutted evidence that such drug had a stimulating effect upon such horse, and it may be reasonably inferred that such stimulant had a resulting effect upon the running ability of such horse.
The State of Ohio has seen fit, under its general police powers, to grant the authority to the Ohio Racing Commission to promulgate reasonable rules for racing.
The reasonable object of the rule in question here is to protect the public in wagering on horse races. These provisions in essence intend that horses entered into races, where betting is provided by law, shall be entered in such a physical condition that the outcome of the race is not affected by the horse's having been administered either a stimulant or a depressant.
It would appear that the enactment of such a rule is of general public benefit, and even though its application to a trainer in a given instance, where there is no knowledge of the use of the drug, is harsh, we hold such rule not to be unreasonable, arbitrary or capricious, especially in the light of such general public welfare to be served by the enforcement of the rule."
Under the procedure followed by the Commission, the plaintiff had the opportunity to rebut the presumption of his violation. Although application of these rules may sometimes be harsh, the difficulty in controlling the business of horse racing and the importance of doing so in the interest of the public necessitates such rules and renders them reasonable.
Judgment affirmed.
DWYER and SMITH, JJ., concur.