**Richard L. HUBEL et al., Plaintiffs,**

**v.**

**The WEST VIRGINIA RACING COM-
MISSION, Defendant.**

**Civ. A. No. 73–171.**

United States District Court,
S. D. West Virginia,
Charleston Division.

May 24, 1974.

Lawrence I. Brynes and Phillip J. Campanella, Spieth, Bell, McCurdy & Newell, Cleveland, Ohio, William E. Mohler, Charleston, W. Va., George A. Chadwick, Jr., Chadwick & Titus, Washington, D. C., for plaintiffs.

Phillip D. Gaujot, Asst. Atty. Gen., Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

K. K. HALL, District Judge.

This is an action to determine the constitutionality of Rule 804 of the West Virginia Racing Commission. Jurisdiction is asserted under 28 U.S.C.A., § 1343.

Plaintiff, Richard L. Hubel, is a race horse trainer licensed by the State of West Virginia. On May 23, 1973, racing officials at Waterford Park, Wheeling Downs, West Virginia, determined that plaintiff had violated Rules 793 and 795(b),[1] relating to the drugging of horses, and suspended him for a period of forty-seven days effective from May 15, 1973, to June 30, 1973, inclusive, and denied plaintiff access to Waterford race track. Additionally, the thoroughbred race horse, Morning Ground, was disqualified from its first position in the third race conducted at Waterford Park on May 7, 1973. On June 6, 1973, plaintiff filed an appeal from the decision of the racing officials to West Virginia Racing Commission, and applied for a stay of the order of suspension. Relying on Rule 804, the Racing Commission refused to stay the order of suspension pending the disposition of plaintiff's appeal. Rule 804 provides:

> "An appeal from a decision of a Racing Official to the Commission shall not affect such decision until the appeal has been acted upon by the Commission."

Plaintiff seeks a declaration that Rule 804 is unconstitutional because it denies him and others similarly situated due process of law in violation of the fourteenth amendment to the Constitution of the United States. Plaintiff also seeks an injunction requiring the Racing Commission to grant such stays in plaintiff's case and all future cases. The action is pending on defendant's motion to dismiss for failure to state a claim pursu-

---

1. West Virginia Racing Commission Rule 793 provides:

793. TRAINER AS INSURER OF CONDITION OF HORSE: PENALTY. The trainer shall be the absolute insurer of and responsible for the condition of the house entered in a race, regardless of the acts of third parties. Should the chemical, or other analysis of saliva, or urine samples, or other tests prove positive showing the presence of any narcotic, stimulant, depressant, or local anesthetic, the trainer of the horse may have any or all of the following penalties inflicted—be fined, be suspended, his license revoked, or ruled off and in addition the owner of the horse, the foreman in charge of the horse, the groom, and any other person shown to have had the care, or attendance, of the horse may have any or all of the following penalties inflicted—be fined, be suspended, his license revoked, or ruled off.

Rule 795(b) provides:

(b) Should the analysis of any saliva, urine, or other sample taken from any horse show the presence of any substance, other than the prohibitive drugs set forth in Rule 793 which is the result of any oral, topical or injected medication which has not been prescribed, administered or dispensed by a licensed veterinarian, the trainer and any other person shown to have had the care of or attendance of the horse may be fined or his license suspended or both.

The constitutionality of this procedure was upheld in State ex rel. Morris v. State Racing Commission, 133 W.Va. 179, 55 S.E.2d 263 (1949). *See* Annot., 3 A.L.R.2d 109 (1949).

ant to Rule 12(b)(6), Federal Rules of Civil Procedure.

Before considering the issues raised by the motion to dismiss, however, two other issues warrant the Court's attention. First, at the hearing conducted on the motion to dismiss, the Court inquired of the parties whether the State is immune from the suit as presently before the Court. Second, the question arises whether this action is properly one for a three-judge district court as required by 28 U.S.C.A., § 2281.

■ Although plaintiff instituted this action against only the Racing Commission and not the individual officials thereof, it is felt that the action is not barred by the doctrine of governmental immunity. Of course, the eleventh amendment to the Constitution of the United States prohibits "any suit . . . against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Furthermore, the Constitution of West Virginia provides:

> The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee. W.Va. Const. Art. VI, § 35.

■ Nevertheless, the law is settled that suits against public officials to enjoin them from invading constitutional rights are not forbidden by the general principle of immunity from suits accorded to states. Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The real test is the relief contemplated.[2] A declaration by this Court that the Racing Commission's Rule 804 is unconstitutional would not sufficiently inconven-

ience the state to justify the application of the government's immunity. See Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1943); Griffin v. County School Board of Prince County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Kondos v. Board of Regents, 318 F. Supp. 394 (S.D.W.Va.1970). Nor does the failure to join the individual Racing Commission officials compel a different result. As the court stated in Dorsey v. State Athletic Commission, 168 F.Supp. 149, 151 (E.D.La.1958), aff'd, 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028 (1959), "(a) state can act only through agents. Whether the agent is an individual official or a Commission, the agent ceases to represent the state where the state power is used in violation of the United States Constitution. There is no merit to the defendant's contention that the plaintiff should have sued the members of the boxing Commission individually. . . ." See also Louisiana State Board of Education v. Baker, 339 F.2d 911 (5th Cir. 1964); School Board of the City of Charlottesville, Virginia v. Allen, 240 F.2d 59 (4th Cir. 1956). Therefore, the action is properly brought against the Racing Commission, and the principles of governmental immunity are not applicable in this case.

■ Having passed this jurisdictional obstacle, it is necessary to decide whether a three-judge district court must be convened to reconsider the merits of this controversy. Under the provisions of 28 U.S.C.A., § 2281, an action to enjoin a state officer from administering a state statute or administrative rule on federal constitutional grounds must be heard by a three-judge district court. See C. Wright, Law of Federal Courts, § 50 (2d ed. 1970). This provision should, however, be strictly construed. Whitney Stores, Inc. v. Summerford, 280 F.Supp. 406 (D.C.S.C.1968). In view of the

---

2. The Court recognizes that plaintiffs have requested a mandatory injunction, but that request is inappropriate. Even in the event

Rule 804 were declared unconstitutional, a mandatory injunction of the kind sought would not be necessary.

above holding that the action is properly brought against the Racing Commission alone, it is apparent that a "state officer" is not a party defendant herein and, therefore, a three-judge court is not required to decide this case. *See* Lewis v. Texas Power & Light Co., 462 F.2d 1318 (5th Cir. 1972); Collins v. Viceroy Hotel Corp., 338 F.Supp. 390 (N.D.Ill. 1972).

Turning to the merits of this action, the specific issue is whether Rule 804[3] of the West Virginia Racing Commission, prohibiting the staying of decisions of racing officials pending appeals of such decisions to the Commission, denies plaintiffs their fourteenth amendment rights to due process of law.

■■ The power of the legislature to regulate or even abolish horse racing is, of course, well established. *See* Harbour v. Colorado State Racing Commission, 32 Colo.App. 1, 505 P.2d 22 (1973); Tweel v. West Virginia Racing Commission, 138 W.Va. 531, 76 S.E.2d 874 (1953); State ex rel. Morris v. West Virginia Racing Commission, 133 W.Va. 179, 55 S.E.2d 263 (1949). The exercise of the state's police power in this area of endeavor is to minimize the potential evil that attends the practice of horse racing. *See* Sandstrom v. California Horse Racing Board, 31 Cal.2d 401, 189 P.2d 17 (1948). It is apparent, therefore, that the state has the inherent authority to require trainers and others associated with horse racing to be licensed and otherwise regulated by the state.

■ Once a license has been awarded a horse trainer, however, it cannot be suspended or revoked without affording the trainer due process of law. Brennan v. Illinois Racing Board, 42 Ill.2d 352, 247 N.E.2d 881 (1969). Plaintiffs argue that the application of Rule 804 to appeals[4] of summary suspensions[5] of licenses denies them the opportunity to be heard on the suspensions, renders their statutory right of appeal meaningless, and, therefore, deprives them of their right to pursue their chosen profession in violation of the fourteenth amend-

3. Rule 804 embodies the directive of W.Va. Code Ann., § 19–23–16(c) (Michie 1971), which provides:

(c) Any person adversely affected by any such order shall be entitled to a hearing thereon if, within twenty days after service of a copy thereof if served in any manner in which a summons may be served as aforesaid or within twenty days after receipt of a copy thereof if served by certified mail as aforesaid, such person files with the racing commission a written demand for such hearing. A demand for hearing shall operate automatically to stay or suspend the execution of any order suspending or revoking a license, but a demand for hearing shall not operate to stay or suspend the execution of any order suspending or revoking a permit. The racing commission may require the person demanding such hearing to give reasonable security for the costs thereof and if such person does not substantially prevail at such hearing such costs shall be assessed against such person and may be collected by an action at law or other proper remedy.

"Permit" is defined at W.Va.Code Ann., §§ 19–23–3 and 19–23–2 (Michie 1971), to include the licenses issued to trainers, jockeys, etc.

4. W.Va.Code Ann., § 19–23–16(c) (Michie 1971), creates the right of appeal to the commission in this instance. *See also* Rule 803, West Virginia Racing Commission, which provides:

803. Any person or persons penalized or disciplined under the laws of the State of West Virginia or under these rules and regulations may request a hearing before the Commission. The request for hearing must be received by the Commission at its office in Charleston within twenty (20) days after receipt of a written order of suspension or revocation. . . . .

5. Rule 802 provides:

802. A majority of the Stewards at any horce race meeting may suspend a license and such suspension or revocation shall be effective immediately. The Stewards shall, as soon as thereafter practicable, make and enter an order to that effect and serve a copy thereon on the license holder, either personally or by certified mail, return receipt requested. Such order shall state the grounds for the action taken.

*See also*, W.Va.Code Ann., § 19–23–16(b) (Michie 1971).

ment. On its face, Rule 804 is indeed broad in its sweep. It is conceivable that in some circumstances the rule could be a mechanism for accomplishing suspensions of racing licenses without ever affording the opportunity for a hearing. As an example of the injustice that could result, the stewards of a race track could summarily suspend a trainer for a violation of Rules 793 or 795(b), and the Commission, by refusing to stay the suspension pursuant to Rule 804 pending appeal, and by further delaying or protracting a determination of the appeal, could effectively thwart the trainer's chances of refuting the charges. The potential harm that could be inflicted upon a trainer in this circumstance is obvious.

█ The broad sweep of Rule 804 is limited, however, by the next succeeding rule. Rule 805 of the West Virginia Racing Commission provides: "(u)pon receipt of the written demand for such hearing, in accordance with Rule 803, a time and place not less than ten (10) nor more than thirty (30) days thereafter will be set by the Commission. Any scheduled hearing may be continued by the Racing Commission upon its own motion or for good cause shown by the person demanding the hearing." *See also* W.Va.Code Ann. § 19–23–16(d) (Michie 1971). When these two rules are read together, it is clear that the requirements of due process are satisfied.

Although the procedure embodied in Rules 802 through 805 involve in all cases a hiatus of at least ten days, summary suspension for that length of time can be justified as a valid exercise of the police power. It is recognized that licenses represent important interests to the holders and should not be taken away without procedural due process. As the Supreme Court has observed, "relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege'." Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L. Ed.2d 90 (1971). Nevertheless, due process does not require a pre-termina-

tion hearing in all situations In R. A. Holman & Co. v. SEC, 112 U.S.App.D.C. 43, 299 F.2d 127, 131 (1962), it is stated, "In a wide variety of situations, it has long been recognized that where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing." *See also*, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908); Eye Dog Foundation v. State Board of Guide Dogs for the Blind, 67 Cal.2d 536, 63 Cal.Rptr. 21, 432 P.2d 717 (1967); DiGenova v. State Board of Education, 45 Cal.2d 255, 288 P.2d 862 (1955). In a situation similar to the one at hand, a statute prohibiting the staying of orders suspending licenses to practice optometry pending review of such suspensions has been held to be constitutional. Flynn v. Board of Registration in Optometry, 320 Mass. 29, 67 N.E.2d 846, 166 A.L.R. 571 (1945). As the court noted, "(t)he legislature may have thought that the professions and callings to which this statute was applicable were such that the public health, safety, and welfare might be protected better if a stay were forbidden." *Id.* at 320 Mass. 34, 67 N.E.2d 850. *See also*, McLellan v. Janesville, 99 Wis. 544, 75 N. W. 308 (1898) (Suspension of liquor license).

█ The harm threatened to the public by the abuses attending horse racing is well documented. As the court in *Morris* opined:

No one, we assume, will contend that the drugging of race horses, in such a way as to affect the result of a race, is not an evil which must be scotched wherever present, and by any reasonable and adaptable method. . . . The simple proposition is that in permitting horse racing in this State, and in permitting wagers thereon the Legislature has weakened in its battle against gambling and all wagers. As enacted, our racing laws del-

egated the management thereof to a Racing Commission, and gave it complete power to adopt rules and regulations therefor . . . (P)atrons of race tracks who, under the pari-mutuel system, make wagers on horse races, shall be given assurance that they will not be deprived of their money through fraudulent practices.

State ex rel. Morris v. West Virginia Horse Racing Commission, *supra*, 55 S. E.2d at pp. 271, 274–275. *See also* Sandstrom v. California Horse Racing Board, *supra*. A thirty-day delay pending a hearing under the West Virginia regulatory scheme does not work a sufficient hardship on plaintiffs to justify invalidating the procedure. *See* Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944). That is, balancing the state's interest in protecting its citizens from fraudulent horse racing practices against harm occasioned plaintiffs by a summary suspension of track privileges for a maximum of thirty days' duration [6] finds firm bases in the protection and furtherance of legitimate state interests. The Court finds and concludes that Rules 804 and 805 represent and constitute a legitimate exercise of the state's police powers. *See* Mitchell v. W. T. Grant Co., — U.S. —, 94 S.Ct. 1895, 40 L.Ed.2d 406, 42 U.S.L.W. 4671 (1974).

It should also be noted that defendant has moved to dismiss the complaint under Rule 12(b)(6), Federal Rules of Civil Procedure, because of plaintiffs' alleged failure to exhaust their state remedies prior to the institution of the pending action. Since defendant's motion to dismiss is granted for the reasons above noted, the Court finds it unnecessary to decide this issue. *But cf.* Chicago v. Atchison, Topeka & Santa Fe R.R., 357 U.S. 77, 89, 78 S.Ct. 1063, 2

L.Ed.2d 1174 (1958); Lane v. Wilson, 307 U.S. 268, 274, 59 S.Ct. 872, 83 L.Ed. 1281 (1939).

Accordingly, it is ordered that defendant's motion to dismiss be, and it is hereby, granted. This case will be closed and be stricken from the docket.

The Clerk is directed to mail, by United States mail, certified copies of this Memorandum Order to all counsel of record.

---

6. Since the Commission can continue the hearing on its own motion, it might be argued that the Commission, by improperly exercising that privilege, could thwart a licensee's right to a hearing. Although the rule is explicit in its terms, it would seem that the Commission would have the inherent authority to continue such hearings. Nevertheless, any such abuse of the statutory grant would more properly be the subject of future litigation.