**PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION and The Board of Trustees of the Public Employees' Retirement Association, Defendants–Appellants,**

v.

**Franklin J. STERMOLE, Plaintiff–Appellee.**

**No. 92CA1661.**

Colorado Court of Appeals, Div. I.

Dec. 2, 1993.

Rehearing Denied Dec. 30, 1993.

Certiorari Denied June 6, 1994.

Sherman & Howard, Mark L. Fulford, Denver, for defendants-appellants.

Bradley, Campbell, Carney & Madsen, P.C., Leo N. Bradley, Jim M. Hansen, Golden, for plaintiff-appellee.

Opinion by Judge PIERCE.

Defendants, Public Employees' Retirement Association (PERA) and the Board of Trustees of the Public Employees' Retirement Association (Board), appeal from a judgment entered in the district court in favor of plaintiff, Franklin J. Stermole, reversing a final order of the Board. We reverse and remand.

Stermole was a professor at the Colorado School of Mines (School) from 1963 through 1990, teaching, among other topics, mineral economics. At the beginning of each year, Stermole entered into a salary contract with the School.

From 1970 until his retirement, he also taught non-credit investment analysis seminars to government and industry professionals. Because the School could not use any of its state allocated budget for any seminar costs, such courses were administered through the School's Office of Continuing Education which is self-supporting. Profits from Stermole's seminars were split 15% to the School and 85% to Stermole's Subchapter S corporation, Investment Evaluation Corporation (IEC).

Beginning in 1975, Stermole was paid partly from the School's state budget and partly from IEC which got its funds from the continuing education budget. For the 1989–90 school year, Stermole's salary contract with the School was for $52,220. For some of the seminars, the payment to Stermole from the Continuing Education office was described as a "consulting fee"; the remainder of the seminars were conducted as a joint venture between the School's Continuing Education office and IEC.

In 1984, Stermole purchased four years of PERA additional service credit based on the payments he had received pursuant to his previous 12 months' salary contract with the School. This salary did not include any monies received through IEC on the Continuing Education program. Then, in order to enhance his salary for retirement purposes, he directed the School's Continuing Education office to pay him directly, for the amounts due under the IEC contract rather than paying IEC under its contractual arrangement with IEC.

Stermole continued to receive the School's Continuing Education money in this manner through 1989, when he reached the highest average salary permissible for use by the PERA in calculation of retirement benefits. IEC then directed the School's Continuing Education office to pay IEC directly from its portion of the seminar profits until Stermole's retirement.

Stermole retired from his position as professor on June 1, 1990. A year before his retirement, PERA estimated that his monthly retirement benefits would be about $6,000. In March 1990, it recalculated the monthly benefit to be $2,493. The PERA administrative review panel (Panel) and subsequently the Board upheld PERA's lower calculation. Stermole sought review in the district court which reversed the Board's order finding that the higher amount was the proper calculation.

The distinction between the two figures, which is the heart of the matter before us, is whether part of the compensation paid to Stermole was "salary" from a state employer and, therefore, included in PERA's benefits calculation, or if it was some other type of compensation paid by some other entity which PERA could properly exclude in its calculation of Stermole's benefits.

Section 24–51–205(1), C.R.S. (1988 Repl. Vol. 10B) gives the Board the authority to make certain factual determinations. It states: "The Board shall have the authority to determine membership status ... eligibility for benefits ... and service credit and salary to be used in calculations pursuant to the provisions of this Article."

To guide it in these determinations, § 24–51–101(20), C.R.S. (1988 Repl.Vol. 10B) states that: "'[E]mployer' means the State of Colorado, ... state university, state college, state junior college, or other public entity which is affiliated with the Plan."

Section 24–51–101(42), C.R.S. (1988 Repl. Vol. 10B) states that: "'[S]alary' means compensation for services rendered to an employer and includes: regular salary or pay ... performance or merit payments, if approved by the Board." That statute also lists types of payments received by a member that are not "salary."

This statutory scheme places the responsibility on the Board to make the factual determinations as to whether income received by a member is or is not salary received by the member from an employer covered by PERA. While the School has authority to set salary and provide compensation to its faculty as it deems appropriate, the Board has authority to determine factually what is and is not salary and whether the entity is an employer for the purpose of determining benefits, pursuant to its governing statute, and the two authorities do not conflict. Nothing in the Board's decision prevents the School from structuring payments in the manner done here; the decision by the Board addresses only the PERA benefits resulting from such compensation.

Here, the Administrative Review Board found that the agreements giving rise to the contested payments were between the Continuing Education office and IEC and were not with Stermole. It further found that IEC billed Continuing Education for continuing education revenue that was not part of Stermole's yearly academic contract. Further, it found that Stermole used IEC to make substantive changes in the amount and timing of his PERA contribution to avoid paying any PERA contributions prior to 1984 and that it allowed him to control the amount of PERA salary to reduce the limited 15% salary increase permitted by the PERA statute. Finally, it found that by using the corporate form, Stermole was able to purchase four years of PERA service credit at a lower rate before allegedly increasing his salary in 1984.

Based on these factual findings, the Panel found that payments to Stermole for Continuing Education courses were made by IEC, an entity which is not an employer under the PERA statute, and not by the School, which is a PERA employer.

The Board's adoption of the Panel's findings is supported in the record. The Board properly approved those findings. *See* § 24–51–205(1), C.R.S. (1988 Repl.Vol. 10B).

PERA is an instrumentality of the State. It contends, therefore, that review by the district court of its decisions is governed by C.R.C.P. 106(a)(4), rather than by § 24–4–106(1), C.R.S. (1988 Repl.Vol. 10A). A division of the court has ruled otherwise. *See Hurricane v. Public Employees' Retirement Ass'n,* 780 P.2d 3 (Colo.App.1989). But, in any event, we do not find this procedural choice significant here.

■ Under § 24-4-106(7), C.R.S. (1988 Repl.Vol. 10A), an agency's quasi-judicial decision must be upheld if a consideration of the record as a whole reveals that decision to be supported by substantial evidence. *De Scala v. Motor Vehicle Division,* 667 P.2d 1360 (Colo.1983). Under C.R.C.P. 106(a)(4), however, the governmental decision cannot be set aside if there is any competent evidence in the record to support it. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304 (Colo.1986). Nevertheless, whichever standard is applied here, the Board's decision is entitled to judicial approval.

The district court here reversed the Board's decision because it ruled that the findings of the Administrative Review Panel which were adopted by the Board were based on erroneous conclusions of law. Because it considered the problem to be an error in law, the trial court found the Board's decision to be an abuse of discretion.

We, however, view the determinations made by the Board as factual, rather than legal determinations. While some other fact finder might have come to different conclusions, the Board has the sole and complete authority to make the factual determinations here. Since there is some competent evidence in the record to support these determinations, and it is supported by substantial evidence contained in the record as a whole, the Board's decision must be upheld.

Therefore, the judgment of the district court is reversed, and the cause is remanded for the reinstatement of the Board's orders.

CRISWELL and ROTHENBERG, JJ., concur.