Robert (Bud) PARTRIDGE,
Owner/Trainer,
Appellant,

v.

STATE of Colorado; Roy Romer, Governor; Department of Revenue; Renny Fagan, Director, Department of Revenue; Colorado Racing Commission; Hector Rene Ramirez, Director, Colorado Racing Commission, Appellees.

No. 93CA2224.

Colorado Court of Appeals,
Div. I.

April 20, 1995.

Shirlee D. Mitchell, Sedalia, for appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas D. Fears, Asst. Atty. Gen., Denver, for appellees.

Opinion by Judge METZGER.

Horse owner/trainer, Robert (Bud) Partridge, appeals the order of discipline imposed against him by the Colorado Racing Commission (Commission). We affirm.

Race horses trained and/or owned by Partridge were treated by a veterinarian at La Mesa Park, a horse racing track in New Mexico. Based on allegations that Partridge had failed to pay for the horses' treatment, the veterinarian obtained a default judgment against Partridge for $3,321.74 in New Mexico.

After receiving a certified copy of the judgment, Colorado authorities commenced this action against Partridge, alleging that he had violated the Department of Revenue Rules Governing Horse Racing No. 8.28, 4 Code Colo.Reg. 724-1 (1994) (Rule 8.28). That rule provides:

> Every licensee is charged with being financially responsible. If the Division receives proof of financial irresponsibility concerning race-related matters, it shall take appropriate action within its authority. The Division shall require a certified judgment from a court of competent jurisdiction in order to determine the validity of an alleged debt.

After a hearing, the Board of Stewards of Arapahoe Park ultimately issued a ruling in which it determined that Partridge had violated Rule 8.28 and it suspended his Colorado owner/trainer's license for the balance of the current racing meet plus 60 days. In addition, the Board of Stewards referred the case to the Commission "with the recommendation that Partridge remain under suspension until such time as he has satisfied his financial obligations with the Mesa Vista Veterinary Clinic in Raton, New Mexico."

Partridge then placed the disputed funds in escrow and sought review of the Board of Stewards' decision by the Commission. On November 9, 1993, the Commission held a *de novo* hearing after which it upheld the Board of Stewards' ruling relative to Partridge having violated the rule, but it directed that the funds in escrow be forwarded immediately to the veterinarian and it ordered that any further suspension be rescinded upon the release of those funds. This appeal followed.

I.

Partridge asserts that, because financial irresponsibility is not listed a basis for discipline in § 12–60–507, C.R.S. (1994 Cum. Supp.), the Commission exceeded its statutory authority by issuing Rule 8.28, requiring financial responsibility. The Commission responds that, pursuant to § 12–60–507(1)(a), C.R.S. (1994 Cum.Supp.), it is authorized to impose discipline upon a licensee for "[d]isregarding or violating ... any rule promulgated by the commission in the interests of the public and in conformance with the provisions of this article." It argues that Rule 8.28 is such a rule. We agree with the Commission.

Legislative delegation of rulemaking and regulatory authority to an administrative agency must provide both sufficient stan-

dards for rational and consistent rulemaking and adequate procedural safeguards for effective judicial review of administrative action. *Orsinger Outdoor Advertising, Inc. v. Department of Highways,* 752 P.2d 55 (Colo. 1988). Because even detailed statutory standards give partial protection only, statutes should also provide for agency adoption of more specific rules and regulations to limit the exercise of broad discretionary power. *Moya v. Colorado Limited Gaming Control Commission,* 870 P.2d 620 (Colo.App.1994).

■ The proper focus to determine the validity of delegation of legislative authority should be upon the totality of protection provided by standards and procedural safeguards at both the statutory and administrative levels. *Douglas County Board of Commissioners v. Public Utilities Commission,* 829 P.2d 1303 (Colo.1992).

In *Harbour v. Colorado State Racing Commission,* 32 Colo.App. 1, 505 P.2d 22 (1973), a division of this court addressed the question whether the General Assembly had unconstitutionally delegated authority to the Racing Commission to promulgate rules concerning the suspension of racing licenses. The statute then in effect had authorized the Racing Commission "to make reasonable rules and regulations ... providing for suspending such licensees." The Racing Commission rule permitted the Board of Stewards to suspend a trainer's license if his or her horse were found to have a prohibited drug in its urine. In upholding the rule, the court concluded:

> Under the procedure followed by the Commission, the plaintiff had the opportunity to rebut the presumption of his violation. Although application of these rules may sometimes be harsh, the difficulty in controlling the business of horse racing and the importance of doing so in the interest of the public necessitates such rules and renders them reasonable.

*Harbour v. Colorado State Racing Commission, supra,* 32 Colo.App. at 8, 505 P.2d at 25.

In *Hargett v. Director, Division of Labor,* 854 P.2d 1316 (Colo.App.1992), a division of this court determined that an agency regulation that reasonably complied with the letter and spirit of the statute and that was fully consistent with the agency director's delegated authority fell within the legislative delegation of the statute. Furthermore, the court stated:

> A party challenging an administrative rule adopted pursuant to statutory authorization has the burden to establish the invalidity of the rule.... Also, in determining the validity of an administrative rule or regulation, a court must accord substantial deference to the interpretation of the regulation and underlying statute given by the agency charged with its administration.

*Hargett v. Director, Division of Labor, supra,* at 1321.

Here, in creating the statutory framework for the regulation of racing, the General Assembly enacted a legislative declaration which states:

> The general assembly declares that the provisions of this article are enacted in the exercise of the police powers of this state for the protection of the health, peace, safety, and general welfare of the people of this state; for the purpose of promoting racing and the recreational, entertainment, and commercial benefits to be derived therefrom; to raise revenue for the general fund; to establish high standards of sport and fair play; for the promotion of health and safety of the animals involved in racing events; and *to foster honesty and fair dealing in the racing industry.* To these ends, this article shall be liberally construed.

Section 12–60–101, C.R.S. (1994 Cum.Supp.) (emphasis added).

Section 12–60–503(1), C.R.S. (1994 Cum. Supp.) provides: "The commission shall make reasonable rules for the control, supervision ... and direction of applicants and licensees, including rules providing for the supervising, disciplining, suspending, fining, and barring from racing all persons required to be licensed by this article...." To emphasize the General Assembly's intent that the Commission's rules be viewed as an integral part of the racing regulation framework, § 12–60–503(2)(a), C.R.S. (1994 Cum.Supp.) states that: "Every person holding a license under this article ... and every owner or

trainer of any horse ... licensed to enter any racing contest under this article shall comply with all rules and orders issued by the commission."

A licensee is subject to discipline for "[d]isregarding or violating any provision of this article or any rule promulgated by the commission in the interests of the public and in conformance with the provisions of this article." Section 12–60–507(1)(a).

To carry out these legislative mandates, the Commission promulgated Rule 8.28. In our view, that rule reasonably complies with the letter and spirit of the racing code. It "fosters honesty and fair dealing in the racing industry" by requiring the financial integrity of licensees. Additionally, it enhances the commercial benefits of the sport by mandating licensees to operate in a businesslike manner. And, it helps to maintain the high standards of ensuring adequate care for the horses which race.

■ Thus, the rule, being both in the interests of the public and reasonable, is fully consistent with the Commission's authority to promulgate rules. Hence, we reject Partridge's contention that the omission of financial irresponsibility from the grounds for discipline enumerated in § 12–60–507 precludes the Commission from enacting Rule 8.28.

## II.

Partridge next contends that the failure of the Board of Stewards to follow its procedural guidelines violated his due process rights. We disagree.

■ Assuming, without deciding, that the Board of Stewards' hearing was not in precise compliance with the procedural guidelines, we find no reversible error. Partridge later received a full and complete *de novo* hearing before the Commission. There, he was represented by counsel and had all the rights afforded by § 24–4–105, C.R.S. (1988 Repl.Vol. 10A). Thus, his due process rights were not violated. *See Davis v. State Board of Psychologist Examiners,* 791 P.2d 1198 (Colo.App.1989).

## III.

Finally, Partridge contends that the record contains insufficient admissible evidence to support the Commission's finding that he had violated Rule 8.28. We disagree.

### A.

First, Partridge argues that the Commission erred by admitting an unsworn statement from the New Mexico veterinarian stating that the debt in question was a race-related matter. We disagree.

■ Administrative hearings need not comply with the strict rules of evidence. The standard to be applied is whether the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. Section 24–4–105(7), C.R.S. (1988 Repl.Vol. 10A); *Colorado Department of Revenue v. Kirke,* 743 P.2d 16 (Colo.1987).

■ Hearsay evidence may be admissible at administrative hearings. *Romero v. Industrial Commission,* 616 P.2d 992 (Colo. App.1980).

■ In determining if hearsay evidence is reliable and has the necessary probative value, the totality of the circumstances must be examined. Factors to be considered include: whether the statement was written and signed; whether the statement was sworn to by the declarant; whether the declarant was a disinterested witness or had a potential bias; whether the hearsay statement is denied or contradicted by other evidence; whether the declarant is credible; whether there is corroboration for the hearsay statement; whether the case turns on the credibility of witnesses; whether the party relying on the hearsay offers an adequate explanation for the failure to call the declarant to testify; and finally, whether the party against whom the hearsay is used had access to the statements prior to the hearing or the opportunity to subpoena the declarant. *See Industrial Claims Appeals Office v. Flower Stop Marketing Corp.,* 782 P.2d 13 (Colo. 1989).

Here, although the veterinarian's statement was unsworn, it was accompanied by

ledger cards and tickets for veterinary services. At the time the statement was signed, the veterinarian had already obtained a final judgment in New Mexico against Partridge.

Additionally, the amount of the New Mexico judgment and the amount in the statement are identical. And, the ledger cards and tickets for veterinary services fully corroborate the statement.

Also, Partridge had access to the statement, the ledger cards and tickets, and the pleadings in the New Mexico case before the hearing. He also had the opportunity to confront and cross-examine the veterinarian, but failed to do so.

■ Our evaluation of the totality of these facts leads us to conclude that the statement possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs. Thus, the Commission did not err in admitting it.

### B.

Partridge next argues that the evidence is insufficient to support the Commission's order. We disagree.

■ An agency's decision must be upheld if a consideration of the record as a whole reveals that the decision is supported by substantial evidence. *Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo. 1982); *Public Employees' Retirement Ass'n v. Stermole*, 874 P.2d 444 (Colo.App.1993). The Commission is an agency with considerable expertise in the area of race-related matters and its conclusions should be given deference. *See Integrated Network Services, Inc. v. Public Utilities Commission*, 875 P.2d 1373 (Colo.1994).

■ The record as a whole supports the Commission's ruling. The Board received a certified copy of the default judgment from a New Mexico court stating that Partridge owed a debt. It received an order of the New Mexico court denying Partridge's motion to set aside the judgment. The veterinarian's statement asserted that Partridge had failed to pay for treatment to race horses at a race track. Also admitted into evidence

were copies of Partridge's unpaid bills for veterinary services rendered to race horses.

Partridge's sole evidence to refute the allegations, other than his counsel's statements, was Partridge's own affidavit claiming that the veterinarian had failed to provide "backup for the charges" owed. Partridge also argued that the veterinarian's "refusal to assist in his own collection efforts makes him the author of his own injury."

We conclude that the record as a whole substantially supports the Commission's order, and we may not disturb it on review. *See Lee v. State Board of Dental Examiners, supra.*

Partridge's other contentions of error are without merit.

The order is affirmed.

MARQUEZ and CASEBOLT, JJ., concur.